## Case No. 9,755.

### MOORE v. CONNECTICUT MUT. LIFE INS. CO.

[1 Flip. 363; 1 Am. Law T. Rep. (N. S.) 319; 3 Ins. Law J. 444; 4 Bigelow, Ins. Cas. 138.] [1]

Circuit Court, E. D. Michigan. April, 7–12, 1874.

LIFE INSURANCE—SUICIDE PROVIDED AGAINST— THE LAW ON THAT SUBJECT.

1. The policy had this clause in it: "If the assured shall die by his own hand," etc., "this policy shall be void and of no effect." *Held*, that

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 1 Am. Law T. Rep. (N. S.) 319, contains only a partial report.]

"suicide" and "die by his own hand," mean, in general terms, the same thing.

2. In a suicide sanity is always presumed, and insanity must be proven, by one claiming exemption on that account. Nor is suicide evidence of insanity in itself alone.

[Wolff v. Connecticut Mut. Life Ins. Co., Case No 17,929.]

3. The presumption of fact, in such case, is that the person "died by his or her own hand," in the sense of the policy. The plaintiff must show the contrary.

4. Every degree of insanity will not exempt a person from the consequences of an act. There must be more than error of judgment. There must be mental disorder.

5. In order to render the defendant liable the mind of the party assured must have been so far deranged as to be incapable of rational judgment in regard to the act of self destruction. The plaintiff must prove that the assured was moved by an insane impulse which he could not resist, or that his powers of reason were so far overthrown as that he could not exercise them in reference to the act of self destruction.

6. "General nature, consequence and effect of the act," are words not restricted to the act of taking his life, but to the result of it. They refer to the accomplished act of suicide.

At law.

C. I. Walker and A. Pond, for plaintiff.

A. B. Maynard and G. V. N. Lothrop, for defendant.

LONGYEAR, District Judge (charging jury). This suit is brought by Lottie A. Moore, the wife of Everett W. Moore, to recover the amount of a policy issued by defendant to her on the life of her late husband, for $5,000. The contract itself is not disputed, but there is a clause in it that raises the whole question in this case, and that clause is as follows: "If the assured shall die by his own hand," etc., "this policy shall be void and of no effect."

That the assured took his own life there is no dispute. The simple question is whether the circumstances under which he took his own life are such as to bring the case within that provision of the policy, that is, was it within the sense of the words "die by his own hand," as these words were used in the policy?

These words, "die by his own hand," mean the same as suicide, in general terms. That was decided in the case of Life Ins. Co. v. Terry, 15 Wall. [82 U. S.] 591, which has been laid before you here, and it has been seen all the way through in the argument of this case, and from the books which have been read, that the discussion of this very clause, and the words similar to it, proceed upon the same principles and upon the same general considerations as suicide; and, consequently, I call your attention in the first place to the definition of suicide as bearing upon the question here under consideration, and I will read that from 4 Bl. Comm. 189. Suicide was placed so long ago as the time when Blackstone wrote, and still stands there by the English law, and also so far recognized and provided for or against in

this country, as felonious homicide. It is placed in the same category as murder. I read from Blackstone as follows:

"Felonious homicide is an act of a very different nature from the former," (that is, of excusable homicide,) "being the killing of a human creature of any age or sex without justification or excuse. This must be done either by killing one's self or another man."

"Self murder—the pretended heroism, but real cowardice of the stoic philosophers, who destroyed themselves to avoid the ills which they had not the fortitude to endure—though the attempting it seems to be countenanced by the civil law, yet was punished by the Athenian law with the cutting off the hand which committed the desperate deed. And also the law of England wisely and religiously considers that no man hath a power to destroy life but by commission from God, the author of it; and, as the suicide is guilty of a double offense, one spiritual, in evading the prerogative of the Almighty, and rushing into his immediate presence uncalled for; the other temporal, against the king, who hath an interest in the preservation of all his subjects; the law has, therefore, ranked this among the highest crimes, making it a peculiar species of felony—a felony committed on one's self; and this admits of accessories before the fact, as well as other felonies, for if one persuades another to kill himself, and he does so, the adviser is guilty of murder."

Now comes the definition of suicide, which I desire to call your particular attention to: "A felo de se, therefore, is he who deliberately puts an end to his own existence, or commits any unlawful, malicious act, the consequence of which is his own death, as if attempting to kill another he runs upon his antagonist's sword, or shooting at another the gun bursts and kills himself. The party must be of years of discretion and in his senses, else it is no crime."

That this party was of years of discretion there is no dispute. The only dispute in this case is as to his being in his senses when he committed the act. In regard to this, sanity is presumed. All persons are presumed to be sane until the contrary is proven. Insanity must always be proven by the party claiming an exemption on account of it. The fact of suicide is not of itself evidence of insanity. That, however, is not disputed, and I need not stop to discuss it to any length whatever.

This covers the first and second of defendant's requests to charge, which I will here read for the purpose of disposing of them.

The defendant requests the court to charge the jury: 1st—"It being admitted that the assured, Everett W. Moore, destroyed his own life, it is a presumption in fact that he "died by his own hand," and in the sense of the policy, and the burden of proof is upon the plaintiff to show that he came to his death under such circumstances as makes

the defendant liable upon the policy." This is correct, and I so charge you. 2d—"There is no presumption arising from the act of self destruction that it was the result of insanity, and the burden of proof is upon the plaintiff to prove that at the time of the death of the said Everett W. Moore, he was insane to such a degree that the defendant is liable upon the policy."

This is simply the proposition that I have already stated, with, however, perhaps a very little qualification. The charge, as I give it to you is, that suicide is not of itself evidence of insanity, standing alone by itself; and the burden is upon the plaintiff in this case to show that insanity existed, and that it was of such a nature and degree as to make the company liable. I will, therefore, next call your attention to the degree of insanity that will not or that will excuse or exempt the party from the provision in the policy.

First, it is not every degree of insanity that will exempt the party taking his own life from the consequences of the act. A person may from anger, jealousy, shame, pride, dread of exposure, fear of coming to poverty, or the desire to escape from the ills of life be considered in a certain sense insane; but these alone are not enough to exempt him from the consequences of self destruction, where he committed the act deliberately and intelligently.

In regard to this it is sufficient to explain that an error of judgment as to the commission of the act is not sufficient to exempt the party—a mere error of judgment, for we may say that all men, perhaps, who decide to take their own lives, when they do it deliberately and intelligently, commit an error of judgment. That is not sufficient to exempt them.

Mental disorder, amounting to insanity, must appear in order to exempt the party. But while these causes, which I have named, are not sufficient alone (such as anger, dread of exposure, a desire to escape from the ills of life, etc.), to exempt the party from the consequences of suicide, there undoubtedly may be circumstances under which these operating together with other circumstances upon the mind, may produce a disorder of the mind. And that is for the jury to determine in every case. Where they have produced a disorder of the mind, then it is that which you are to consider, and not the mere peculiar causes which produced it. And in this connection, I will notice the third, fourth, and fifth of the defendant's requests, and the plaintiff's first request.

The plaintiff requests the court to charge the jury: "That if the death of the deceased was not his voluntary, intelligent act, he did not die by his own hand within the meaning of the policy." That is correct as a general principle, and I so charge you.

The defendant's third request is as follows: "If the assured, being in possession of his reasoning faculties, and from shame, pride, a dread of exposure, or a desire to escape from the ills of life, intentionally took his own life, there can be no recovery." This I have already explained to you.

The fourth request is: "If the assured was embarrassed in his business, or had drawn checks without having any funds upon which to draw, or had committed forgeries and exposure was imminent, or was in a distressed state of mind from this or some other cause, and for any or all of these reasons he formed a determination to take his own life, because, in the exercise of his usual reasoning faculties, he preferred death to life, then the company is not liable." This is undoubtedly correct, and I so charge you. If for these reasons he took his own life in the exercise of his usual reasoning faculties, then the company is not liable.

5th—"It is not every kind or degree of insanity that will so far excuse the act of self-destruction as to make the company liable." I have already covered this in my charge. I merely read these now for the purpose of disposing of them.

Thus far there is no great difficulty in applying the law to any given case, or to this case. You will next proceed to the question of the degree of insanity that will excuse. Here the difficulty, in cases of this kind, begins, and your real burdens in this case commence. The court can aid you but little in this respect, further than to lay down the general principles by which you are to be governed. These have been well defined by the highest court of adjudicature in this country, by whose decision this court and the jury must be governed. They are well set forth in the requests of the respective counsel.

I will now read the sixth and seventh requests of defendant's counsel, which are as follows: 6th—"To have this effect—that is, that insanity shall have the effect to excuse the act—the mind must be so far deranged as to have made the deceased incapable of using a rational judgment in regard to the act of self-destruction." This is correct, and I so charge you.

7th—"To make the defendant liable, the plaintiff must prove either, first, that the assured was impelled by an insane impulse which the reason that was left him did not enable him to resist; or, secondly, that his reasoning powers were so far overthrown that he could not exercise them on the act which he was about to do." This request is correct law, and I so charge you.

The plaintiff's second request virtually covers the same ground, and I will simply read it for the purpose of showing that fact, and for the purpose of disposing of it: "If the deceased was impelled to the act by an insane impulse which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties in the act he was

about to do, the company is liable." This is correct, and I so charge you.

I will now dispose of plaintiff's third request, as to which there is some dispute between counsel. The request is as follows: "If the death was caused by the voluntary act of the deceased, he knowing and intending that his death would be the result of his act, and when his reasoning faculties were so far impaired that he was not able to understand the moral character, general nature, consequences and effects, of the act he was about to commit; or, if he was impelled thereto by an insane impulse which he had not the power to resist, such death was not within the contemplation of the parties to the contract, and the insurer is liable."

The last part of the request is included in the second request, and it can be just as well stricken out, and I will leave it out for the purpose of perspicuity in considering this particular request. I will read it again, leaving out that last clause: "If the death was caused," etc., "when his reasoning faculties were so impaired that he was not able to understand the moral character, the general nature, consequence and effect of the act he was about to commit, the company is liable."

That is the request which the court has been asked to give. The criticism upon this request by defendant's counsel is, in the first place, that, although so declared by the supreme court of the United States in the case of Life Ins. Co. v. Terry [15 Wall. (82 U. S.) 580], it was merely dictum—that it was not included in the points presented to the court for decision, and consequently is not binding upon this court, and that it is not good law. If that declaration of the supreme court was within the question presented, it is absolutely binding upon this court and upon you. We will, therefore, first consider that question.

I think the learned court of appeals of New York, which has made the same criticism on the decision of the supreme court (Van Zandt v. Mutual Ben. Life Ins. Co., 55 N. Y. 169), and the learned counsel in this case have overlooked one peculiar feature of the case of Life Ins. Co. v. Terry [supra], and that is the refusal of the court below to charge as requested. This precise question was presented in the request to charge, which the court refused to give, and the charge which was given by the court below must be read in connection with and in the light of the requests which had been made and refused, and that request presenting this exact question of the moral character of the act, and of moral insanity, in my opinion was clearly and fully before the supreme court. For the purpose of sustaining that position, I will read the request which was refused, and in response to which the charge was given which was given:

The second request on the part of the defendant was: "That if the jury believe, from the evidence, that the said self-destruction of said George Terry was intended by him, he having sufficient capacity at the time to understand the nature of the act he was about to commit, and the consequence which would result from it, then in that case it was wholly immaterial that he was impelled thereto by insane impulse which impaired his sense of moral responsibility, and rendered him to a certain extent irresponsible for his action," thus presenting the exact question upon which the supreme court passed, and which is embodied in the plaintiff's third request.

It is true, the court below did not include in express terms in the charge given this moral responsibility or of moral insanity, but the terms used in the charge which was given are broad enough to include that; and in view of the fact that the court had been requested to charge otherwise, and then using expressions which are broad enough to include that, it is fair to presume that it was so included, and that the jury so understood.

The language of the charge as given was as follows: "If he was impelled to the act by an insane impulse which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties in the act he was about to do, the company is liable." This charge must be read in the light of the request which had been refused, and which expressly included the question of moral insanity.

I therefore hold that the question was disposed of finally by the supreme court in a manner absolutely binding upon this court. I therefore give the plaintiff's third request as stated. These words, "general nature, consequence and effect of the act," have been somewhat criticised, and I deem it my duty to make a few remarks in regard to them, as they are used in that decision. They do not refer to the act, in my opinion, by which the deceased took his life. They are broader than that; they refer to the entire act—not only the act by which he took his life, but the result of it; that is, they cover the "suicide," the accomplished fact, and that is what is referred to as the "general nature, consequence and effect of the act"—that is, the general nature of the suicide, of the murder committed upon one's self, the enormity and effect of it, otherwise it would be inconsistent with what precedes; because, if it was his voluntary act, he knowing and intending that his death would be the result, then it would be a simple absurdity to put the question to you, whether, under these circumstances, if he did not understand the general nature and consequences of the act, the company would be liable. That would be, I say, absurd. These words then, have a broader meaning, and cover the entire accomplished fact—the act of suicide.

In this view of the case, gentlemen of the jury, it is entirely unnecessary for me to detain you with any remarks or considerations, growing out of my own views or opinions as

to the correctness of the law as established by the supreme court, and which has just been given you as contained in the plaintiff's third request. I will, therefore, pass it with a single remark, that a considerable time ago, after that case of Life Ins. Co. v. Terry had been decided in the court below, but before it was decided by the supreme court, I had occasion to pass upon the same question in the case of Wolff v. Connecticut Mut. Life Ins. Co. [see Case No. 17,929], and then decided as I now find myself enabled to decide, and my views have not changed upon that subject since that time.

Although I find it nowhere distinctly so stated, yet from the discussions upon the subject, I gather that these defenses, as they may be called, to the crime of suicide, are placed upon the same ground so far as this question of the moral character of the act is concerned, as defenses for murder. It has always been held that a person killing another when so insane as not to be capable of judging between right and wrong, should not be convicted of murder. What I mean is, the principle is the same, although the standard or degree may be different. This is virtually so stated in Life Ins. Co. v. Terry, 15 Wall. [82 U. S.] 591. This ability to judge between right and wrong, refers to a principle of the human mind. It does not depend at all upon what a man's religious belief may be, or whether he has any or has not. It does not depend upon whether he believes in a God and a future state, or the contrary. It refers to that principle which is planted in every human breast—that sense of right and wrong which exists in the mind of the disciples of Buddha or of Confucius, or of the followers of Mahomet or of Christ, and in the mind of him who believes in none of them. It is that sense of right and wrong that we all feel and realize and understand. It is true that sense is stronger in some persons than in others, but it is that to which reference is had in this connection.

The defendant's eighth request I will now consider.

Counsel for Defendant.—That is virtually passed upon by your honor; it is simply refused, as I understand it.

The Court.—Very well, that is all that need be said on that subject. Defendant's eighth request was as follows: "That the evidence in this case does not tend to show that degree of insanity on the part of the assured which excuses the act of self-destruction, and justifies the jury in rendering a verdict for the plaintiff; therefore the verdict must be for the defendant."

Gentlemen of the jury, I have done about all that I can do in this case, and have made these questions as clear as they can be made with the ability I have; and if it is not clear in your minds what your duty is, it rests in the difficulty of making it so more than in the efforts which have been made by the counsel on both sides, and by the court.

The propositions of law that have been stated to you are such as there is no dispute about between counsel, with the exception of the last, and that has been determined by the supreme court, and we must obey. This case, gentlemen of the jury, rests upon presumptions entirely; that is to say, it rests upon the conclusions which you are to draw as to the existence of a certain fact from the proof of the existence of other facts. For insanity and the degree of it are not susceptible of positive proof in a case like this. There are instances in which it may be proven with a great degree of certainty by positive proof, such as in the case of a raving maniac; but here it rests upon presumptions entirely, and your decision of the case depends upon the conclusions which you shall draw as to the fact of sanity or insanity from the facts proven. You start out with the presumption of sanity. The burden of proof is upon the plaintiff to prove the contrary. If the plaintiff has sustained that burden, and has so proven to your satisfaction, then she may be entitled to recover at your hands. If she has not, then the defendant is entitled to your verdict.

The first question for you to determine is, Do the presumptions arising from the facts proven overcome the presumption of sanity? The truest test is whether the facts proven, from which you are asked to find insanity, are inconsistent with sanity. If they are so inconsistent with the exercise of sound mind that you cannot reasonably attribute such facts thereto, then they are evidence of insanity, but not otherwise.

Now there is a great range of indications as to soundness or unsoundness of mind, all the way from the ravings of the maniac, which are patent to the eye and the ear, down to the retiring melancholic, who seeks to conceal the worm which is gnawing at his mental vitality. These indications, I say, range all the way between these; and here is where the difficulty exists in coming to a correct conclusion as to what facts do indicate; but it is peculiarly and entirely and exclusively within your province, and I leave it to you without even rehearsing the facts or in any manner deciding them.

Evidence is that which carries conviction to the mind. You are to look at all the facts which have been proven, and to bring to bear upon them your best judgment aided by your experience and observations in life, and considerations to which you have access, without, however, going outside of the proofs in the case, and decide for yourselves whether, in the first place, Everett W. Moore, at the time he took his own life, was sane or insane. Secondly, if you shall find that he was insane, then whether under the charge that has been already given, he was so insane as to excuse or exempt him and this plaintiff from the consequences of the prohibition or disability in the policy. I recommend to you in your consideration to adopt

that order: First, the question of insanity in general terms—was he insane? If you decide that he was not insane, then, of course, that is the end of it, and your verdict must be for the defendant. If you shall decide that he was insane, you must go then a step further, and inquire whether his insanity was of that degree and kind that you are satisfied that he was driven by an irresistible impulse to commit the act, or that he was incapable of exercising his reasoning powers as to the moral character, general effect and consequences of taking his own life. If, after finding that he was insane, you shall come to the conclusion that he was thus insane, the plaintiff is entitled to recover at your hands; otherwise not. If your verdict shall be for the plaintiff it will be for $5,000, and interest from the 30th day of December, 1873, to and including the present date.

Counsel for Defendant.—I desire, growing out of what your honor has said, to make another request: "That the mere fact that the assured did not fully understand and appreciate the moral character of the act of self-destruction, does not so far excuse the act as to make the defendant liable."

The Court.—I cannot see how this varies in any manner the charge as already given, and I therefore refuse this request, with the simple addition that the jury are to take this refusal into consideration, in connection with the charge which has already been given upon this subject.

The jury, after consideration, returned a verdict for plaintiff.

Defendant excepted to refusal of the court to charge as requested in eighth request, and the last request made above. Exception was also taken to the court ruling out the testimony offered by defendant of certain witnesses who had testified as to conduct of deceased prior to his death, and on which they had formed no opinion as to his sanity or insanity, but had, since his death formed an opinion. They were asked to state what this last opinion was, which was objected to as being incompetent and irrelevant and the objection was sustained by the court.

NOTE. "If he shall die by suicide" or "by his own hand," the self-destruction is voluntary, and the meaning is the same. See 7 Heisk. 567; 21 Pa. St. 466; 4 Hill, 74; 44 E. C. L. 336; 4 Allen, 96; [Life Ins. Co. v. Terry]; 15 Wall. [82 U. S.] 591; 54 Me. 224. Mental insanity has been defined to be, where a person has not mind of sufficient strength to understand the physical act about to be committed, and moral insanity is where he cannot distinguish between right and wrong. Should the insanity be of either kind, the policy is not protected against by the words "suicide" or "dying by hand." See Terry v. Life Ins. Co. [Case No. 13,839], and 6 Bush. 268. For a further discussion as to the law bearing upon the questions raised in this case, see Equitable Life Assur. Soc. v. Patterson, 41 Ga. 338; Cooper v. Mutual Ins. Co., 102 Mass. 227; Minick v. Mutual Ben. Life Ins. Co., 3 Brewst. 502; Stormont v. Waterloo Life & Casualty Assur. Co., 1 Fost. & F. 22; Borradaile v. Hunter, 5 Man. & G.

639; and Schwabe v. Clift, 2 Car. & K. 134. As to suicide, see further, 4 Hill, 73; 4 Lans. 202; 8 N. Y. 299; 37 N. Y. 580; 47 N. Y. 52; 55 N. Y. 651; 59 N. Y. 557; 65 N. Y. 232.

NOTE [from 4 Bigelow, Ins. Cas. 138]. See note to Borradaile v. Hunter, 2 Bigelow, Ins. Cas. 303.