### SUPREME COUNCIL OF ROYAL ARCANUM v. WISHART.

(Circuit Court of Appeals, Third Circuit. January 8, 1912.)

#### No. 53 (1,526).

**1.** Insurance (§ 788*)—Mutual Benefit Society—By-Laws—Application.

A by-law of a mutual benefit society providing that the taking of his own life by a member within five years after initiation, whether sane or insane, shall cancel the member's certificate, was thereafter amended so as to declare that the taking of a member's own life, whether sane or insane, after five years from the date of his initiation and within five years from and including date of changing from a lower to a higher certificate, shall cancel the certificate to the extent of the increased amount of benefit and terminate the rights of all persons thereto. *Held* that, where a member died of his own hand 18 years after his initiation, but less than five years after taking out a new certificate payable to a new beneficiary for the same amount, neither the original provision nor the provision as amended was applicable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1956; Dec. Dig. § 788.*

Mutual benefit insurance contracts as affected by subsequent provisions and amendments of charter, constitution, or by-laws, see note to Supreme Council, American Legion of Honor, v. Champe, 63 C. C. A. 285.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INSURANCE (§ 788*)—MUTUAL BENEFIT SOCIETY—BENEFIT CERTIFICATE—SUICIDE.

In the absence of applicable by-laws of a mutual benefit insurance society regulating suicide, the suicide of a member while sane avoids the certificate.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1956; Dec. Dig. § 788.*]

3. INSURANCE (§ 788*)—MUTUAL BENEFIT ASSOCIATION—BY-LAWS—SUICIDE.

The fact that the by-laws of a mutual benefit insurance society provided that suicide within five years after initiation should avoid the policy, did not raise a presumption that suicide after that time would not bar liability whether insured was sane or insane.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1956; Dec. Dig. § 788.*]

4. INSURANCE (§ 817*)—DEFENSES—SUICIDE—PRESUMPTIONS.

The mere fact of suicide committed by insured is insufficient of itself to remove a presumption of sanity which obtains in all cases where human conduct is under investigation.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 817.*]

5. INSURANCE (§ 817*)—DEFENSES—SUICIDE—BURDEN OF PROOF.

Where insured committed suicide, the burden is on plaintiff in an action on a benefit certificate to prove that he was not of sound mind at the time.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 817.*]

6. INSURANCE (§ 819*)—SUICIDE—INSANITY—EVIDENCE.

In an action on a benefit certificate in which the defense of suicide was pleaded, evidence held insufficient to authorize a finding that insured was insane at the time he committed suicide.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 819.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by William W. Wishart for the use of certain others against the Supreme Council of the Royal Arcanum. Judgment for plaintiff, and defendant brings error. Reversed, and judgment non obstante veredicto entered for defendant.

Joseph A. Langfitt (Langfitt & McIntosh, on the brief), for plaintiff in error.

J. Roy Dickie (Wishart & Dickie, on the brief), for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. Action was brought in the court below by the defendant in error against the plaintiff in error (hereinafter called the defendant), to recover, as beneficiary in a certain benefit certificate issued by the defendant to Otho Milton Hartzell, as a member of one of its councils, the sum of $3,000, covenanted to be paid upon the death of the said Hartzell to the said beneficiary, such certificate being dated the 12th day of September, 1908. The defendant is a beneficial association, with the fraternal and secret features common to such organizations. The certificate sued upon was one issued upon the surrender of a prior certificate, for the same amount, dated the 10th day of April, 1890, in which the wife of the insured was named

as beneficiary.  The rules of the society permitted a member holding a benefit certificate to change the beneficiary, upon a written request and in compliance with certain regulations and conditions prescribed in relation thereto.  Upon the surrender of the former certificate, it issued a new one, with the new beneficiary named therein.  It is not denied that the certificate sued upon was issued to the decedent in pursuance of his right, as a member of the association, to change the beneficiary named in the original certificate.

[1] At the time of Hartzell's initiation as a member of the society in 1890, the by-laws of the same were silent as to the suicide of a member, and its effect upon his beneficiary's right to collect the amount of insurance stated in the certificate.  On August 1, 1904, 14 years after Hartzell's initiation, the laws of the order were amended, and the following section was added:

"Section 473A.  The taking of his own life by a member within five years from and including the date of his initiation, whether he be then sane or insane, shall cancel and render null and void the benefit certificate and terminate all rights and privileges of all persons thereunder and under his membership in the order."

On August 1, 1908, this section was amended by adding to it the following paragraph:

"The taking of his own life by a member, whether he be then sane or insane, after five years from the date of his initiation, and within five years from and including the date of his changing from a lower to a higher certificate, shall cancel and render null and void the benefit certificate, to the extent of the increased amount of the benefit, and terminate the rights of all persons thereto."

It is not disputed that, under the stipulation contained in the benefit certificate, that the insured must "comply with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund," the amendments above quoted would apply to and modify the contract sued upon, if they were applicable thereto.  But it is obvious that neither of these by-laws apply to the case in hand.  The first does not, because Hartzell's death by his own hand took place 18 years after his initiation as a member of the society, and the second does not, because the new certificate issued by the society was not a change from a lower to a higher amount of insurance.  We therefore cannot agree to the proposition urged on the part of the appellee, if the question could be raised on this record, that "where a life insurance company or a beneficial society fixed a period in its policy, certificate or by-laws, within which, if the insured commit suicide, the policy or certificate should be avoided, death of the insured by suicide after the expiration of such period does not constitute a defense to an action on the policy."

[2] We must assume from reason as well as authority that, prior to the adoption of the by-laws in question, it was not "within the contemplation of either party to the contract, that the company shall be liable upon its promise to pay, where the insured, in sound mind, by destroying his own life, intentionally precipitates the event upon the happening of which such liability was to arise."  "Suicide" by

one of sound mind "does not 'avoid' the policy; against this event, the policy does not exist." Ritter v. Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693. The effect of the suicide upon the liability of the insurer is of course predicated upon the determination of the question, whether the insured was sane or insane. Davis v. Supreme Council of the Royal Arcanum, 195 Mass. 402, 81 N. E. 294, 10 L. R. A. (N. S.) 722; Burt v. Union Cent. Ins. Co., 187 U. S. 362, 23 Sup. Ct. 139, 47 L. Ed. 216. In this case the principle is applied where the insured has brought about his own death by capital execution as the result of the crime of murder of which he was convicted. Hopkins v. Northwestern Life Assur. Co. [C. C.] 94 Fed. 729.

By the amendment to the by-laws, it is provided (as we are given to understand is now the case in most, if not all, life insurance policies) that, if the insured commit suicide within a stated period after the taking out of the certificate or policy, the insurer shall not be liable, and this, whether the insured at the time be sane, or insane. This provision has become common, doubtless for the obvious reason that thereby there will be measurably removed the temptation to take out a certificate or policy with the intent to anticipate the natural occurrence of death, in order to the sooner achieve some ultimate disposition of the insurance money. By this provision, if the insured takes his own life within the period named, there is no question of sanity or insanity to be determined, because the contract in effect stipulates that, under such circumstances, there shall be no liability, whatever the condition of the insured might have been as to sanity or insanity. It would seem necessarily to follow that cases of suicide, after the expiration of this prescribed period, must be governed by the general law of the contract to which we have above alluded, and the liability of the insurer will depend upon the sanity or insanity of the insured.

[3] We have dwelt so much on what seems too obvious for argument, for the reason that counsel for the appellee has with much insistence urged in his argument (though the question is not raised in this record), that inasmuch as the by-laws in question provided that in cases of suicide within a certain period, there should be no liability, whether the insured was sane or insane, there is an implication that in cases of suicide occurring after the prescribed period, the question of sanity or insanity is immaterial. We cannot so understand it.

The court below, however, properly ignored these by-laws, and the contention of the plaintiff founded thereon, and submitted to the jury the only issue raised in the trial of the case, viz., whether the insured was sane or insane when he took his own life An instruction prayed for by the defendant, that on all the evidence the verdict should be for the defendant, was refused. The jury returned a verdict for the full amount for the plaintiff, and the defendant filed a motion for judgment non obstante veredicto, which the court refused and ordered judgment on the verdict. To the judgment thus entered, the defendant has sued out this writ of error.

Disregarding all other assignments of error than the one founded

upon the judgment non obstante veredicto, and the refusal to give peremptory instructions in favor of the defendant, we have carefully examined all the evidence relating to the sole issue submitted to the jury.

[4] There is no reason why the mere fact of suicide should remove the presumption of sanity which obtains in all cases where human conduct is under investigation. It is true, suicide may be taken in connection with other evidence with which it is consistent, to show insanity, but, standing alone, it cannot support the issue.

[5] The burden in such cases as the present is upon the plaintiff to prove that the insured was not of sound mind when he took his own life. Ritter v. Insurance Co. (supra); Insurance Co. v. Rodel, 95 U. S. 240, 24 L. Ed. 433; Coverston v. Conn. Mut. Life Ins. Co., 6 Fed. Cas. 654, Fed. Cas. No. 3,290; Gay v. Mut. Life Ins. Co., 10 Fed. Cas. 114, 9 Blatchf. 142, Fed. Cas. No. 5,282; Moore v. Conn. Mut. Life Ins. Co., 17 Fed. Cas. 672, 1 Flip. 363, Fed. Cas. No. 9,755.

[6] We start, therefore, with the presumption of sanity in the defendant's favor, and we find nothing in the evidence, whether it be the testimony of witnesses or the letters written by the insured shortly prior to his death, forecasting the same and making deliberate arrangements therefor, or the circumstances of the case, that in the slightest degree tend to rebut that presumption. It is not merely an absence of testimony in rebuttal, but there is in the record a by no means meager amount of evidence, oral and documentary, all tending to confirm the presumption of sanity. The persons who saw most of him during the weeks or months immediately prior to his death, all testify that there was nothing in his conversation, conduct or bearing, tending to show insanity. Two of these witnesses said they had no opinion as to his sanity or insanity, because in their intercourse with him, the question had never occurred to them. The proprietor of the hotel at San Rafael, where Hartzell resided for some months prior to his death, and in a room of which he took his own life, testified that he was in constant intercourse with him, seeing him two or three times a day; that he often came into his private office and talked with him, and the only impression made upon the witness' mind was that he was a more than usually bright and intelligent man, normal in his habits and conduct, particular about his person and dress, gentlemanly, and "in every way mild, gentle and genial," and that in his opinion his mental condition was normal. The daily intercourse thus testified to continued down to the very day of his death. The testimony of the only other witnesses called to speak of the impression made upon them as to his mental condition just prior to his death, testified to nothing at all at variance with the testimony just referred to, but strongly corroborate the same.

There are two letters in evidence, written by Hartzell on the morning of the day on which he committed suicide; one to Mr. Orpin, the proprietor of the hotel, one to Mr. De Forrest, apparently an intimate friend, whom he asked to attend to everything connected with his death and funeral, and another to his attorney in Pittsburgh, written on April 16th, three days before his death. The tone, style and substance of these letters, so far from suggesting insanity, strongly sup-

port the presumption of his sanity. They are well and clearly written and betoken the mind of the writer as one of more than usual self poise. It will not do to say, as was intimated in argument, that the very clearness, intelligence and well defined purpose exhibited by these letters, written in immediate prospect of the awful event they refer to, indicate unsoundness of mind. The ordinary processes of the reasoning faculty must be perverted in order to establish such a conclusion, and a jury cannot be permitted, upon such evidence alone, any more than upon the mere fact of suicide, to infer the insanity of the deceased. The mere suggestion that the writer has cunningly simulated sanity in the composition of these letters, without any evidence tending to show such simulation, must of course be rejected.

Upon a careful examination of all the evidence, both written and oral, disclosed by this record, we are of opinion that there is nothing from which a jury could justifiably have found that O. M. Hartzell, the insured, was insane at the time of his death.

The judgment below must therefore be reversed, and a judgment non obstante veredicto entered for the defendant.