(100 App. Div. 49)

## MAUCH v. SUPREME TRIBE OF BEN HUR.

(Supreme Court, Appellate Division, Fourth Department. December 7, 1904.)

1. MUTUAL BENEFIT INSURANCE—CERTIFICATES—RESTRICTIONS—SUICIDE.
    A provision in a mutual benefit certificate that the society should be relieved from full liability in case of suicide, whether insured was sane or insane, was valid and enforceable as against the beneficiary.

2. SAME—CONSTRUCTION.
    The benefit laws of a mutual benefit association provided that, if any member committed suicide, such act avoided all rights under his certificate, except that the executive committee of the association should pay to the beneficiary a certain reduced amount, according to certain other subdivisions of the section, one of which declared that, if the member committed suicide within one year from the date of his certificate, the beneficiary should receive one-twentieth of the amount thereof. *Held* that, since no immunity from liability in case of self-destruction other than suicide was provided for, the society was liable for the full amount of a certificate issued to a member who died from strangulation occasioned by hanging herself while insane; she being incapable of an intent to take her life, which was a necessary element of suicide.
    Stover, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Clayton C. Mauch against the Supreme Tribe of Ben Hur. From a judgment in favor of plaintiff, entered on a referee's report, defendant appeals. Affirmed.

The following is the opinion of Referee Davie:

The defendant is a fraternal benefit society, incorporated under the laws of the state of Indiana, having a subordinate branch at Olean, N. Y., known

---

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1956.

as Olean Court, No. 43. On the 7th day of April, 1902, the defendant issued to Hattie D. Mauch, the wife of the plaintiff, a beneficiary certificate, whereby it undertook to pay unto the plaintiff, the beneficiary therein named, the sum of $1,300 upon satisfactory proof of the death of the wife. This contract contained the provision that the same was issued subject to, and to be construed and controlled by, the laws, rules, and regulations of the order then in force, or which might thereafter be adopted. At the bottom of the contract is a printed acceptance thereof, signed by Mrs. Mauch, in the following form: "I hereby accept this certificate on the conditions named above and agree that my rights and the rights of my beneficiary shall be governed and controlled by the Laws, Rules and Regulations of the Supreme Tribe of Ben Hur, now in force or which may hereafter be adopted." On the 16th day of October, 1902, Mrs. Mauch died from strangulation occasioned by having hung herself to a hook in the clothesroom adjoining her sleeping apartment. The injury causing her death was self-inflicted. At the time of her death, and for several weeks prior thereto, she was insane. Her self-destruction was not her voluntary, intelligent, or rational act, but it was the result of her mental derangement. Soon after her death, proper notice thereof was given the defendant, and the requisite proofs of death furnished. In consequence of the death of Mrs. Mauch being self-inflicted, the defendant claims immunity from liability for the principal sum specified in the contract; admitting, however, a liability under its benefit laws to the extent of one-twentieth part of such sum.

The defendant had adopted a constitution and set of rules and regulations for the government of the order, which were in force at the date of the contract and at the time of the death of Mrs. Mauch. Section 101 of the benefit laws provides: "No benefit shall be paid on account of the death of a member, which death occurred from suicide, whether sane or insane, or whether voluntary or involuntary. (1) If a member commit suicide within one year from the date of his beneficial certificate and while the same is in full force and effect, as shown by the books of the supreme tribe, the amount payable to his beneficiary or beneficiaries shall be one-twentieth of the amount of the certificate held by him at the date of his suicide." It was competent for the defendant to limit its liability by the provisions of its beneficiary contract with its members. An express agreement that the defendant should be relieved from all liability to the beneficiary in case the member took his own life, although insane and irresponsible at the time, would have been valid and binding. The courts have frequently upheld the legality of such a limitation. De Gogorza v. Insurance Co., 65 N. Y. 232; Bigelow v. Insurance Co., 93 U. S. 286, 23 L. Ed. 918; Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347; Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308.

If the provisions of section 101, above quoted, to the effect that no benefit shall be paid where death occurred from suicide, whether sane or insane, voluntary or involuntary, are not modified or controlled by any other provision of the contract, the plaintiff can recover only one-twentieth part of the sum specified in the certificate. In other words, if the contract between Mrs. Mauch and the defendant was to the effect that the defendant should not be liable in case she became insane, and as a result thereof took her own life, the plaintiff's claim cannot be maintained. It therefore becomes important to determine precisely what the contract was, so far as it relates to the subject of self-destruction. Section 95 of the benefit laws of the defendant prescribes with great particularity the form of the benefit certificate, the body of the certificate in controversy being in exact conformity with the requirements of that section. This section also requires that there be indorsed on the back of the certificate a table of benefits and monthly payments, and also the following statement: "Sec. 5. Any member of the Tribe of Ben Hur that commits suicide, ipso facto voids all rights under his beneficial certificate, and ipso facto forfeits all benefits whatsoever to which his beneficiary or beneficiaries would otherwise have been entitled, under the general laws of the order, to receive from the supreme tribe: provided always that the executive committee shall pay to the beneficiary or beneficiaries of the deceased the amount provided herein, such amount being de-

termined by the face value of certificate or certificates, held by the member at the time of his death by suicide considered in proportion to the length of time he shall have been continuously in good standing in the order immediately preceding the date of suicide.  (1) If a member commit suicide within one year from the date of his beneficial certificate and while the same is in full force and effect as shown by the books of the supreme tribe the amount payable to his beneficiary shall be one-twentieth of the amount of the certificate held by him at the date of his death.  *  *  *"  These indorsements, being required by section 95, are as much a part of the contract as if contained in the body of the contract.  The certificate issued to Mrs. Mauch has the following printed indorsement thereon:

"Your attention is directed to the following extract from the laws with relation to suicide:

### "Suicide."

Then follows in full section 5, above quoted.  The defendant, for the purpose of limiting its liability in case of the self-destruction of a member, by a specific indorsement on the back of the contract, to which the member's attention is specifically and pointedly called, and made in conformity with the requirements of section 95 of its benefit laws, says to the member, "If you commit suicide, such act, ipso facto, voids all rights under your benefit certificate."  No immunity from liability in case of self-destruction is thereby suggested, except in case of suicide.  No intimation that the certificate should be void if the member became insane, irresponsible, and impelled to self-destruction by an uncontrollable insane impulse.  In such a case death is as much a result of disease as if its proximate cause had been cancer or tuberculosis, and is clearly a source of liability, unless the plain provisions of the contract exempt defendant therefrom.  The contract between the defendant and Mrs. Mauch was to the effect that her beneficiary should be entitled to recover the sum of $1,300 upon her death, unless she committed suicide, and it should not be held that the effects of this contract are to any extent modified by the ambiguous provisions of section 101.  If Mrs. Mauch committed suicide, the plaintiff cannot recover.  If she did not, he is entitled to the full amount of the beneficiary certificate.  Mrs. Mauch did not commit suicide, within the legal meaning and significance of such term.  In Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347, Werner, J., says: "For colloquial purposes, the term 'suicide' is at once sufficiently specific and comprehensive to cover all kinds of human self-destruction; but, if the law is to distinguish between the self-destruction of the insane and the self-inflicted death of the sane, insurance contracts must be construed in the light of the definitions which express the distinction.  Our Penal Code defines suicide as the intentional taking of one's own life, and the definitions referred to in Weber v. Maccabees, supra, are to the same effect.  Intent is the essence of the act, and this presupposes reason or sanity."  In Weber v. Supreme Tent of the Knights of the Maccabees, 172 N. Y. 491, 65 N. E. 258, 92 Am. St. Rep. 753, Parker, C. J., says: "In the eye of the law, the taking of life by an insane person, whether it be his own or that of some other person, is not an act for which he is responsible.  In the Century Dictionary a suicide is defined to be 'one who commits suicide; at common law, one who, being of the years of discretion and sound mind, destroys himself'; and the act itself is defined to be 'designedly destroying one's own life.'  To constitute suicide at common law the person must be of years of discretion and of sound mind."

The defendant having contracted for immunity from liability in case of suicide, and Mrs. Mauch not having committed suicide, the plaintiff is entitled to recover the full amount of the beneficiary certificate, and judgment in his favor against the defendant is accordingly directed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

P. S. Collins, for appellant.
Henry Donnelly, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.

McLENNAN, P. J., concurs, and votes for an affirmance of the judgment, upon the grounds stated in the opinion of the learned referee, and also upon the authority of Weber v. Supreme Tent of K. of M., 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753, and Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347, in which cases it was held that the insane act of taking one's own life while insane is not suicide. In the case at bar it was expressly found by the referee, and the finding is not questioned, "that at the time of the death of the said Hattie D. Mauch [the insured], and for several weeks prior thereto, she was insane; that the taking of her own life was not a voluntary, intentional, or rational act, but was solely the result of, and occasioned by, the insanity of the said Hattie D. Mauch." The death having resulted as indicated in the finding of the referee, under the decisions adverted to the insured did not commit suicide, and therefore the provision in the by-law is in no manner applicable. Suicide is intentional self-destruction. The intent is the essential thing, under the definition of the Court of Appeals; and, if the act was insane or irrational, there could be no intent, and therefore no suicide. It is absurd to say that suicide is intentional self-destruction, and to also say that suicide is unintentional self-destruction. The words as used in the certificate in question are not without meaning, even when the word "suicide" is defined as above indicated. A sane person, of course, may commit suicide. So may an insane person. It is quite possible for a person who is insane—even one who has been judicially determined to be insane—to commit a great variety of rational acts, to have intent with respect to acts, to deliberate, to reason, to determine; and if a person, although insane, exercising his will power in respect to the taking of his own life, fully appreciating the consequences, intending so to do, should take his own life, it would be suicide, and no recovery could be had under a policy like the one in question.

As we have seen, the referee in this case found that the act which resulted in the death was not an intentional act, but was an insane act of a person who was insane at the time. Therefore we conclude that she did not commit suicide, as defined by the decisions of the Court of Appeals in the two cases to which attention has been called, and so the judgment appealed from should be affirmed, with costs.

STOVER, J. (dissenting). This is an action to recover upon a certificate issued by the defendant, by which it was agreed to pay upon satisfactory proof of the death of Hattie D. Mauch the sum of $1,300, less certain sums stipulated in the certificate. The defendant is a fraternal beneficiary corporation, and the certificate is issued only to members of the order. The certificate contains the following paragraph:

"This certificate is issued subject to and to be construed and controlled by the laws, rules and regulations of the order, now in force, or which may

hereafter be adopted. The application for membership is hereby referred to, and made a part of this contract."

By section 101 of the rules and regulations it is provided:

"No benefit shall be paid on account of the death of a member, which death occurred * * * (6) or from suicide, whether sane or insane, or whether voluntary or involuntary, at the time, except when the sanity of such member shall, prior thereto, have been judicially determined by the proper court. It is, however, expressly provided that if any beneficial member of the Tribe of Ben Hur commits suicide, he ipso facto voids all rights under his beneficial certificate, and ipso facto forfeits all benefits whatsoever to which his beneficiary or beneficiaries would otherwise have been entitled, under the laws of the order, to receive from the supreme tribe: provided always that the executive committee shall pay to the beneficiary or beneficiaries of the deceased the amount herein provided, such amount being determined by the face value of the certificate, or certificates, held by the member at the time of his death by suicide, taking into consideration the length of time he shall have been continuously in good standing in the order, immediately preceding the date of suicide," based upon the length of time the certificate had been in force.

Upon the back of the certificate issued to the insured was printed the following notice:

"Your attention is directed to the following extract from the laws with relation to suicide:

"Suicide.

"Sec. 5. Any member of the Tribe of Ben Hur that commits suicide, ipso facto voids all rights under his beneficial certificate, and ipso facto forfeits all benefits whatsoever to which his beneficiary or beneficiaries would otherwise have been entitled, under the general laws of the order, to receive from the supreme tribe."

Then follows a schedule showing the amounts to be received, based upon the time the policy has been in force.

It was conceded at the trial that the deceased was insane at the time of her death, and the referee found that her death was self-inflicted; she having hung herself to a hook in a clothesroom in her residence. It was also found that the act was occasioned by her insanity, and was not the voluntary, rational act of the insured. The referee found that the defendant, having made the indorsement upon the back of the certificate stating the rights and liabilities of the respective parties in case of suicide, was estopped and precluded from claiming immunity from liabilities on account of the provisions of any other section of the constitution or laws of said defendant, and gave judgment for plaintiff for the amount of the policy. It was conceded on the trial that plaintiff was entitled to recover the sum of $65, being the sum to which he would have been entitled to judgment under the schedule set forth in by-law 101.

We think the finding of law by the referee that the defendant was estopped cannot be maintained. The stipulation in the certificate was that the certificate was subject to all the rules and regulations of the society, with which the insured was bound to be acquainted. The stipulation is that she shall be bound by all the rules and regulations. The fact that the defendant called attention to one of its by-laws, and not to another, is not sufficient to avoid the contract. Section 5 does not in any way purport or

attempt to qualify the original stipulation in the policy that it shall be subject to all the rules and regulations. Having once entered into the stipulation, the defendant was not bound to again call attention to each and every provision of the policy; but if, for any reason, it called especial attention to any of the provisions, it was only a matter of extra precaution, and did not in any way waive any of the other provisions, or authorize the insured to rely upon the notice as superseding the more comprehensive stipulation of the policy.

The respondent upon this appeal bases an argument, rather ingenious, upon the language of the court in Weber v. Supreme Tent of K. of M., 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753, but the exact question at issue in that case was not as to the construction of a by-law of this kind, but as to the effect of an amendment of the rules after the issuing of a policy which insured against unintentional self-destruction; and it was held that a society which had insured a member against unintentional self-destruction after one year could not, by a subsequent amendment of its by-laws, provide, in effect, that self-destruction while insane within five years from the date of the policy should deprive the beneficiary of his rights under the contract, for the reason that the amendment was unreasonable. The case does not assume to hold that the parties to a contract of insurance may not stipulate at the time as to the conditions under which a certificate may issue.

The argument of the respondent further is based upon the legal definition which has been given to the term "suicide," and is to the effect that, as the court has held the legal definition of "suicide" to be "the intentional taking of one's own life," therefore, as an insane person is incapable of forming any intent, there can be no such thing as suicide while insane. We think a logical construction of the language of the policy under discussion can be had without resorting to strained or unusual definitions of the language used. As was said in the case of Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347:

"For colloquial purposes the term 'suicide' is at once sufficiently specific and comprehensive to cover all kinds of human self-destruction, but, if the law is to distinguish between the self-destruction of the insane and the self-inflicted death of the sane, insurance contracts must be construed in the light of definitions which express the distinction."

And in that case, there being a finding of the trial court that the insured committed suicide, it was held that his act was illegal, and that, under a provision of the policy which avoided the policy if his death should be caused by any illegal act, the plaintiff was not entitled to recover.

In insurance contracts, as in all other contracts, the primal consideration is the intent of the parties; and this intent, if not illegal, is to be given effect. As we have seen, the language is sufficiently broad to cover any cause of self-destruction. It will be presumed that the language was of some significance, and is to be construed so as to give effect to the intent of the parties. Under the broad definition of the word "suicide," the clause would be rendered, "if

death occurred . from self-destruction, whether sane or insane, whether voluntary or involuntary"; and this would appear to be a fair construction of the language used, and one which gives the clause its full effect, without rejecting or straining any of the language employed. As was said in Weber v. Supreme Tent of K. of M., supra:

"It was entirely competent, of course, for the defendant to provide in the contract between it and its members that there should be no recovery in the event that within a given period the insured should take his own life, although insane; and it could as well have provided that the effect of a death by consumption should be to avoid the policy and deprive it of all force, and the same could be said of typhoid fever or any other disease."

But in the case cited, as the policy contained no such stipulation, it was held that the plaintiff was entitled to recover. It is difficult to see how that case can logically aid the plaintiff here.

Again, it is said that the two provisions of the policy, namely, the section indorsed on the policy and section 101, are inconsistent, but we do not think this well founded. Section 5 is entirely embraced within section 101; section 101 not being inconsistent, but more comprehensive, the greater embracing the less, and the provisions are not inconsistent.

We think the judgment directed by the referee was not warranted, and that, under the stipulation of the policy, the death of the insured, caused by her own hand, avoided the policy.

It appears, and the referee has found, that the policy was issued on the 7th day of April, 1902, and that the death of the insured occurred on the 18th day of October, 1902. Under the stipulation of the policy, it having been in force less than one year, the beneficiaries were entitled to recover one-twentieth of the face of the policy; and the judgment should have been for this sum, together with interest. The referee has directed interest from March 1, 1903, in accordance with the demand of the complaint. The case is silent as to the service of proofs of death, as the policy would have become payable only upon the proofs of death, and interest would probably run from that date, but the appellant makes no point upon this appeal of the failure of plaintiff to file proofs of death.

Judgment should be directed for the plaintiff in the sum of $65, with interest from March 1, 1903, with costs to the appellant.