has been sustained. 1 McAdam on Landlord and Tenant (3d Ed.) 369, 373; Jones on Landlord and Tenant, § 387; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Hawralty v. Warren, 18 N. J. Eq. 124, 90 Am. Dec. 613; Knerr v. Bradley, 105 Pa. 190; Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur; CARR, J., in separate memorandum.

CARR, J. I concur with Mr. Justice BURR in his opinion that the judgment for the defendants on the pleadings should not have been granted. Under her complaint, the plaintiff might have shown that the option agreement and the lease were made and delivered as part of one and the same transaction. Actual notice of the option agreement on the part of the defendants is alleged. The case would then stand on the same basis as if the option agreement was contained in the lease itself. It is quite common to find such option agreements in leases. It would be going very far to hold that such agreements in leases are not enforceable in equity. If such is to be held, then the holding would be quite contrary to the common understanding of the parties. I think that the Court of Appeals, in its opinions in Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571, and Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251, did not intend to declare that option agreements, in leases, at least, were beyond the protection of equity under proper circumstances.

---

CHRISTY et al. v. AMERICAN TEMPERANCE LIFE INS. ASS'N.

(Supreme Court, Trial Term, Niagara County. May 18, 1910.)

1. INSURANCE (§ 646*)—LIFE INSURANCE—ACTIONS—SUICIDE—BURDEN OF PROOF.

Suicide is an affirmative defense, which the company must establish in an action on a life policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1663; Dec. Dig. § 646.*]

2. INSURANCE (§ 447*)—PROXIMATE CAUSE OF DEATH.

If insured fell into a cistern, and was drowned while trying to hide herself from imaginary pursuers in an insane delusion, the accidental fall, and not her volitional act, was the proximate cause of her death.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1151; Dec. Dig. § 447.*]

3. INSURANCE (§ 550*)—PROOF OF DEATH—EFFECT.

While statements contained in the proof of death are prima facie true, they may be shown to have been erroneously or inadvertently made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1358–1361; Dec. Dig. § 550.*]

4. EVIDENCE (§ 79*)—PRESUMPTIONS—FABRICATED ADMISSIONS.

When admissions are offered against the party alleged to have made them, and prove to be fabricated, that fact makes the evidence weigh against the party fabricating them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 100; Dec. § 79.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. INSURANCE (§ 665*)—LIFE INSURANCE—ACTIONS—SUFFICIENCY OF EVIDENCE —CAUSE OF DEATH—SUICIDE.

   In an action on a life policy, evidence *held* not to exclude the hypothesis of death by accident, instead of suicide.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1719, 1720; Dec. Dig. § 665.*]

6. INSURANCE (§ 146*)—LIFE INSURANCE—CONTRACT—INSTRUCTION.

   A life insurance contract should be construed in cases of doubt against the person framing the language of the policy.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292–298; Dec. Dig. § 146.*]

Action by Harriet E. Christy and others against the American Temperance Life Insurance Association. Judgment for plaintiffs.

A. Morris, for plaintiffs.
M. A. Gearon, for defendant.

POUND, J. Action upon a policy of life insurance upon the life of Emily Bogardus. The policy, or its predecessor, had been in force for 15 years at the time of death. Defense, except as to repayment of premiums, suicide.

The policy provides, among other things:

"Third. After this policy shall have been in continuous force for five years from its date, it shall thereafter be incontestable except for misstatement of age, fraud, nonpayment of any payment or payments due to the association under the conditions of this policy, or for the use or sale of alcoholic liquors in any form as a beverage."

"Sixth. If the insured shall die by his own hand or act, whether sane or insane, or shall under any circumstances suffer death in consequence of the violation by him of any penal law, of any state or government, then this policy shall be void; but the association, within ninety days after the acceptance of satisfactory proofs of such death, shall pay to the beneficiary named herein the amount of premiums paid by the insured to the association on this policy, which said payment shall be in full payment and liquidation of all liability of the association under this contract, or by reason of the membership had by the said insured in the said association."

"Tenth. The entire contract contained in this policy and said application, taken together, shall be governed by, subject to, and construed only according to the constitution and by-laws and regulations of said association with the amendments made and that may hereafter be made thereto, and the laws of the state of New York, the place of this contract being expressly agreed to be the home office of said association in the city of New York; and said association shall not be liable nor shall any suit or proceeding be brought after the lapse of one year from the date of the death of said member."

The by-laws further provided (article 8, § 3) that:

"Death caused by a member's own hand, act, or deed, whether voluntary or involuntary, sane or insane at the time, is a risk not assumed by the association."

The case is barren of any direct evidence either of the remote or the immediate cause of death; i. e., whether by suicide or otherwise, and whether by drowning or otherwise. The dead body of the insured was found at her daughter's home, near her own home, by her husband, about an hour and a half after he last saw her alive, in an ordinary cellar cistern, containing water of the depth of four inches. It seems to have been taken for granted, from the surrounding circum-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stances at the time, that the case was one of suicide by drowning.. The preliminary notice of death and the proofs of death presented on behalf of the beneficiaries, the present plaintiffs, to the defendant, on their face so state. The coroner who viewed the body and the family physician so certified, although neither of them made any tests to determine the cause of death, or acquired any personal knowledge on the subject or any information from these plaintiffs.

But suicide is an affirmative defense, which the defendant is bound to establish. Plaintiffs now offer, as they are fully justified in doing, the hypothesis of accidental death, and challenge the defendant to exclude the possibility thereof with any degree of reasonable certainty. It appears on the trial by undisputed evidence that the deceased was an elderly woman, who had been in feeble health for about one year prior to her death; that she was insane, and that her insanity took the form of intermittent delusions that she was being pursued by officers of the law; that, when these spells came on her, she was accustomed to secrete herself from her imaginary pursuers; that she had given no signs of a suicidal tendency; and that, when she left her home to go to her daughter's house, she was under the influence of this insane delusion. If, as is not incredible, in an effort to conceal herself in the cistern, she fell and was drowned, the accidental fall, and not her own act, was the proximate cause of death. Plaintiffs go further, and offer evidence tending to show that death was not due to drowning, and the circumstantial evidence even of drowning is much weakened thereby. I would hesitate to base an affirmative finding of the immediate cause of death on the plaintiffs' evidence. A finding of death from causes unknown is, however, fully sustained by the evidence.

Defendant was unable to combat the theory of accidental death, or death from causes unknown, with anything more weighty than the admissions of plaintiffs contained in the proofs of death. If these admissions were squarely brought home to plaintiffs, they would go far to convince me that the present theory of insanity and accident was an afterthought, concocted to meet the supposed necessities of the case. Prima facie, such statements are true, but they raise no estoppel and are open to proof that they were erroneously or inadvertently made. In this case, there is a total failure of direct evidence to bring knowledge of the contents of the proofs of death home to the plaintiffs or to charge them therewith. Owing to the positive denials of the plaintiffs and the extreme diffidence and uncertainty of the local representative of the defendant who prepared the papers and transmitted them to the company, the evidence which might be strong and convincing in favor of the company is at least equally balanced on the question whether the statements of cause of death purporting to emanate from plaintiffs are their admissions or the self-serving declarations of defendant itself. Fabricated admissions are evidence against the fabricator. On the entire case, the evidence is equally consistent with death by suicide and death from causes unknown. Defendant has therefore failed to exclude the hypothesis of death by accident and plaintiffs are entitled to recover.

Even if suicide were satisfactorily established, it would still be questionable whether defendant could succeed in view of the noncontesta-

bility clause contained in the policy. Paragraph 3, supra. It has been held that the noncontestability clause prevails over the suicide clause in such cases. Mareck v. Mutual Reserve Fund Life Ass'n, 62 Minn. 39, 64 N. W. 68, 54 Am. St. Rep. 613. The contract is to be construed strictly against the person whose language is used in expressing it. Schumacher v. G. E. C. & I. Co., 197 N. Y. 58, 90 N. E. 353. The policy does not say on its face that suicide is not an assumed risk. It says merely that in case of suicide the policy will be void. The by-law is much broader, but, where the conditions appear explicitly in the certificate, the by-laws cannot narrow them adversely to insured's interest. Fairness to the insured requires as much. Mauch v. Supreme Tribe of Ben Hur, 100 App. Div. 49, 91 N. Y. Supp. 367, affirmed 184 N. Y. 527, 76 N. E. 1100. In the case of Thommen v. Jewelers' & Tradesmen Co., 15 Misc. Rep. 473, 37 N. Y. Supp. 222, where it was held that the suicide clause controlled, suicide was in terms "not a risk assumed." Other cases in point, holding one way or the other, are Hall v. Mut. Life Ass'n, 19 Pa. Super. Ct. 31; Simpson v. Insurance Co., 115 N. C. 393, 20 S. E. 517; Childress v. Fraternal Union, 113 Tenn. 252, 82 S. W. 832; North A. Union v. Trenner, 138 Ill. App. 586, 593. But a decision on this point is not essential here, and further discussion by way of dictum would be profitless.

Judgment for plaintiffs. Prepare decision accordingly.