Sarah Shipman, Respondent, v. The Protected Home Circle, Appellant.

1. Insurance — When By-laws of a Co-operative Life Insurance Corporation Are Retroactive. Under an express agreement by a member of a mutual benefit association to comply with "all the laws, rules, regulations and requirements now in force or that may be hereafter enacted," by-laws thereafter regularly adopted become retrospective as well as prospective in their operation except as to rights which have become fixed or vested by the terms of the original contract.

2. Suicide of Insured while Insane — Insurer Liable upon Death Therefrom, unless Expressly Excepted from the Risk. Where the

contract is silent upon the subject of self-destruction by the insured while insane, death from that cause is clearly within its terms, and having acquired a fixed and vested right to insurance covering that risk, no subsequent amendment of the by-laws can affect that right without the express consent of the insured.

3. EFFECT OF FINDING THAT THE INSURED COMMITTED SUICIDE. An unqualified finding that the insured committed suicide is, under the statute which defines suicide as the intentional taking of one's own life (Penal Code, § 172), a determination that it was the intentional act of a sane man.

4. SUICIDE OF INSURED WHILE SANE — EFFECT OF BY-LAW, ENACTED AFTER THE ISSUING OF CERTIFICATE OF INSURANCE, DECLARING CERTIFICATE VOID IF INSURED SHALL "DIE BY SUICIDE, FELONIOUS OR OTHERWISE." Where the contract is silent upon the subject of the suicide of a member while sane, a by-law subsequently enacted providing that the certificate issued to him shall become void "in case he shall die by suicide, felonious or otherwise, sane or insane, or by his own hand, sane or insane, provided that in such case there shall be refunded to the beneficiary named in said certificate the amount of all payments made, together with interest thereon at the rate of three per cent per annum," applies to a certificate in force at the time of the amendment, issued to a member who thereafter commits suicide while he is sane, first, because it invades no vested right, and, second, it is a fundamental though unexpressed part of the original contract that the insured shall not cause his own death.

5. EFFECT OF STIPULATION THAT, IF DEATH OF INSURED BE CAUSED BY ANY ILLEGAL ACT OF HIS OWN, HIS RIGHTS UNDER THE CERTIFICATE SHALL REVERT TO THE ASSOCIATION. Where, however, the contract is not silent, but the insured expressly stipulates that in case his death shall be caused by any illegal act of his own, all his right, title and interest in the beneficiary fund shall revert to the association, and he thereafter commits suicide, which under the common law was a crime and under the Penal Code (§ 173) is "a grave public wrong," and to say the least must be regarded as an illegal act within the purview of the language of the contract, the contract is rendered nugatory by force of its own provisions.

6. RIGHTS OF BENEFICIARY, UNDER CERTIFICATE OF CO-OPERATIVE INSURANCE ASSOCIATION, IN CASE OF SUICIDE OF INSURED. Assuming that there is no provision either in the by-laws or the contract relating to suicide by the insured while sane, unless the intention of the association to incur such risk is clearly and unequivocally expressed, such act will forfeit the certificate, although the beneficiary named therein takes the insurance money directly by the terms of the contract and not derivatively, as in the capacity of heir or legal representative of the suicide, because in co-operative or assessment life insurance the beneficiary has no such vested rights as are acquired under ordinary life insurance policies issued for the benefit of third persons, which cannot be defeated by the subsequent acts of the insured; but on the contrary the beneficiary takes the certificate subject to change without his consent in accordance with the

constitution and by-laws of the association and has no vested interest in either the certificate or the money to be paid upon it. It follows, therefore, that the beneficiary under a certificate issued by a mutual benefit association, who takes his rights through the insured and subject to the terms of the contract entered into by him, can no more benefit by the wrong of the insured in willfully and intentionally taking his own life than the legal representatives of the insured in an ordinary life insurance policy could under the same conditions.

*Shipman* v. *Protected Home Circle,* 66 App. Div. 448, modified.

(Argued March 3, 1903; decided April 9, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 25, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot, A. W. Williams, A. A. Van Dusen* and *W. G. Martin* for appellant. The amendment as to suicide adopted by the defendant association is within the power to amend, is reasonable and applied to William N. Shipman at the time of his death. (*S. M. B. Society* v. *Burford,* 70 Penn. St. 321; *Supreme Tent* v. *Hammer,* 81 Ill. App. 560; *Bigelow* v. *B. L. Ins. Co.,* 93 U. S. 284; *De Gogorza* v. *K. L. Ins. Co.,* 65 N. Y. 232; 3 Am. & Eng. Ency. of Law [2d ed.], 1064; *Supreme Commandery* v. *Ainsworth,* 71 Ala. 436; *Supreme Lodge K. O. P.* v. *La Malta,* 95 Tenn. 157; *Hughes* v. *W. O. F. M. L. Ins. Co.,* 98 Wis. 292; *State ex rel.* v. *G. L. A. O. U. W.,* 70 Mo. App. 456; *Daughtry* v. *K. O. P.,* 48 La. Ann. 1203.) The amendment complained of is in no sense retroactive, neither is it subversive of any vested right. (Bacon on Ben. Societies, 91a.; *Poultney* v. *Bachman,* 31 Hun, 49; *Sanger* v. *Rothschild,* 123 N. Y. 579; *Brown* v. *C. M. B. Assn.,* 33 Hun, 263; *Boasberg* v. *Cronan,* 30 N. Y. S. R. 483; *S. P. M. Soc.* v. *MacVey,* 92 Penn. St. 510; *Stohr* v. *S. F. M. F. Assn.,* 82 Cal. 557; *Wist* v. *Grand Lodge,* 22 Oreg. 271; *Supreme Tent* v.

*Hammer*, 81 Ill. App. 560; *Supreme Commandery* v. *Ainsworth*, 71 Ala. 436; *De Gogorza* v. *K. L. Ins. Co.*, 65 N. Y. 232.) The agreement as found in the record in this case existing between Mr. Shipman and the defendant fixes and determines the rights and liabilities of the parties to this action. It is free from ambiguity, doubt or uncertainty, and, therefore, it is its own interpreter. (*Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6, 12; *Clark* v. *Fey*, 121 N. Y. 470; *Tobias* v. *Lissberger*, 105 N. Y. 404; *Norrington* v. *Wright*, 115 U. S. 188; *Hill* v. *Blake*, 97 N. Y. 220; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 347; *Bank of Montreal* v. *Recknagle*, 109 N. Y. 490, 491; *Lake* v. *McElfatrick*, 139 N. Y. 357.) The trial court having found that the deceased "committed suicide," and undisputed evidence showing he was sane at the time, even if the application for insurance, the policy of insurance, and constitution of defendant did not show that the consideration for the insurance of deceased was that he should comply with defendant's rules and regulations as amended, and continue paying assessments, and do no illegal act, still the suicide of deceased is fatal to any claim for insurance on his life. (*Van Zandt* v. *Ins. Co.*, 55 N. Y. 169; *Bigelow* v. *Ins. Co.*, 93 U. S. 284; *Ritter* v. *Ins. Co.*, 169 U. S. 139; *McClure* v. *M. L. Ins. Co.*, 55 N. Y. 169; *Weed* v. *M. B. L. I. Co.*, 70 N. Y. 562; *Breasted* v. *F. L. & T. Co.*, 4 Hill, 75.)

*George J. Dikeman* for respondent. The plaintiff was not bound by any act of William N. Shipman after the policy was issued unless such act was inhibited by the express terms of the contract as first made. (*Supreme Lodge* v. *La Malta*, 95 Tenn. 157; *Becker* v. *B. B. Society*, 144 Penn. St. 232; *Parish* v. *N. Y. P. Exch.*, 169 N. Y. 34; *Weber* v. *Supreme Tent K. O. T. M.*, 172 N. Y. 490; *Roberts* v. *Grand Lodge A. O. U. W.*, 173 N. Y. 580; *Deuble* v. *Grand Lodge*, 66 App. Div. 323; *Weiler* v. *Equitable Aid Union*, 92 Hun, 277; *McNeil* v. *S. T. M. Relief*, 40 App. Div. 581; *F. L. & T. Co.* v. *Aberle*, 19 App. Div. 79; *Englehardt*

v. *F. W. L. Assn.*, 148 N. Y. 281.) The point which is
now said to be the deeper question in this case to the effect
that even assuming that the by-laws as amended did not apply
to this plaintiff, nevertheless, the defendant should have
succeeded, for the reason that William N. Shipman commit-
ted suicide, cannot at this time avail the defendant and appel-
lant. (*Snead* v. *Bonnoil*, 166 N. Y. 325; *Post* v. *M. Ry.
Co.*, 125 N. Y. 697; *Lewis* v. *N. Y., L. E. & W. R. R.
Co.*, 123 N. Y. 496; *Varian* v. *Johnston*, 108 N. Y. 645;
*Mayor, etc.*, v. *N. Y. R. Co.*, 146 N. Y. 210; *Werner* v.
*City of Rochester*, 149 N. Y. 563; *Moffat* v. *Fulton*, 132 N.
Y. 507; *Toplitz* v. *Bauer*, 161 N. Y. 325; *Quinlan* v. *Welch*,
141 N. Y. 158; *Dodge* v. *Cornelius*, 168 N. Y. 242.) Death
by suicide is no defense to a policy of life insurance, payable
to a beneficiary who does nothing towards the consummation
of the act, and who does not derive title in any manner through
the suicide, unless it is expressly stated in the contract of
insurance that such risk is not assumed. (*Darrow* v. *F. F.
Society*, 116 N. Y. 537; May on Insurance, §§ 323, 324; *A.
Society* v. *Bolland*, 4 Bligh, 194; *Breasted* v. *F. L. & T. Co.*,
8 N. Y. 299; *Borradaile* v. *Hunter*, 5 M. & G. 639; *Clift*
v. *Schwabe*, 3 C. B. 437; *Bradley* v. *M. B. L. Ins. Co.*, 45 N.
Y. 422; *Van Zandt* v. *M. B. L. Ins. Co.*, 55 N. Y. 169;
*Hunter Case*, 5 M. & G. 639; *Kelley* v. *M. L. Ins. Co.*, 109
Fed. Rep. 56; *Smith* v. *N. B. Society*, 123 N. Y. 85.)

WERNER, J. The defendant is a co-operative life insurance
corporation, organized under the laws of Pennsylvania and
doing business in this state. The plaintiff is the designated
beneficiary in a certificate issued to her husband by the
defendant in March, 1897, for the sum of twenty-five hundred
dollars, payable to the plaintiff upon the death of her husband.
The latter came to his death by suicide in April, 1900, in the
state of Pennsylvania. When the benefit certificate was issued
neither it nor the by-laws of the defendant contained any pro-
vision against suicide, but in May, 1897, the by-laws were
amended by adding thereto a section which reads as follows:

"The benefit certificate issued to a member shall become void and all benefits thereunder shall be forfeited in case the insured *shall die by suicide, felonious or otherwise, sane or insane, or by his own hand, sane or insane; provided that in such case there shall be refunded to the beneficiary named in said certificate, the amount of all payments made, together with interest thereon at the rate of three per cent per annum.*"

The application, signed by plaintiff's husband, upon which the benefit certificate herein was issued, contained the following stipulation : "I do hereby agree that compliance on my part with all the laws, rules, regulations and requirements now in force or that may hereafter be enacted by the association is the express condition upon which I am entitled to participate in the beneficiary fund, and to the amount named in the constitution and laws of the association. I further agree that should my death be caused by or through intemperance, or any illegal act of my own, all my right, title and interest in the beneficiary fund shall revert to the association."

When the plaintiff, after her husband's death, demanded payment of the amount specified in the certificate it was refused by the defendant upon the ground that by committing suicide the insured had forfeited all rights which he or his beneficiary might otherwise have had under the certificate of insurance. Thereupon this action was brought. At trial court it was held that the amended by-law above quoted was valid, but was not intended to apply to outstanding beneficiary certificates and it was upon this theory that plaintiff was permitted to recover. The judgment entered upon this decision was affirmed at the Appellate Division without written opinion. Upon this appeal the correctness of this judgment is challenged by the defendant upon several grounds. 1. It is contended that under the amended by-law referred to, the suicide of the insured worked a forfeiture of all benefits provided for in the contract. 2. It is urged that even if the amended by-law is not valid in its entirety, it is binding in the case at bar. 3. It is claimed that if the amended by-law had never been enacted the plaintiff would

not be entitled to recover under the facts of this case. We
will briefly consider these points in the order in which they
have been stated.

The plaintiff's husband, as we have seen, became a member
of the defendant in March, 1897. The amended by-law under
discussion was adopted in May, 1897. In the absence of a
finding to the contrary, we must assume that its enactment
was regular and in accordance with the provisions of defend-
ant's constitution. By the express terms of the contract
between the plaintiff's husband and the defendant the former
agreed to comply with " all the laws, rules, regulations and
requirements now in force *or that may be hereafter enacted*"
by the latter. Under these conditions all by-laws regularly
adopted by the defendant became retrospective as well as
prospective in their operation upon the plaintiff's husband,
except as to rights which had become fixed or vested by the
terms of the original contract. In the original contract there
was no mention of death by self-destruction or suicide of a
member, whether sane or insane. As the death of a member
might result from any one of a number of diseases or causes
which were not specifically enumerated in the contract, so
self-destruction might be the culmination of mental derange-
ment superinduced by causes as uncontrollable as some forms
of physical disease. When the death of an insured person is
due to such a cause, the insurer is always liable to the bene-
ficiary unless the particular cause is one which by the express
terms of the contract is excepted from the risk. As the con-
tract was silent upon the subject of self-destruction by the
insured while insane, death from that cause was clearly within
its terms. Upon the execution of the contract the insured,
therefore, acquired a fixed and vested right to insurance cover-
ing that risk. No subsequent amendment of the by-laws
could affect that right without the express assent of the
insured. This doctrine has recently been reaffirmed by this
court in *Weber* v. *Supreme Tent of Knights of Maccabees* (172
N. Y. 490), and, if we could here end the discussion of this
case, upon the assumption that plaintiff's husband was insane

when he took his life, the *Weber* case would be a controlling authority in favor of this plaintiff's right to recover.

But we cannot stop here. The learned trial court has found that the plaintiff's husband committed suicide. There is no finding whether he was sane or insane. For colloquial purposes the term "suicide" is at once sufficiently specific and comprehensive to cover all kinds of human self-destruction; but if the law is to distinguish between the self-destruction of the insane and the self-inflicted death of the sane, insurance contracts must be construed in the light of definitions which express the distinction. Our Penal Code defines suicide as the intentional taking of one's own life (sec. 172) and the definitions referred to in *Weber* v. *Maccabees* (*supra*) are to the same effect. Intent is of the essence of the act and this presupposes reason or sanity. Thus the unqualified finding of the learned trial court that plaintiff's husband committed suicide is in effect a determination that it was the intentional act of a sane man. Aside from this, however, there is the presumption of sanity which must be entertained in the absence of proof. Insanity cannot be predicated simply upon the act of self-destruction, for human experience has shown that sane men have taken their own lives. To the extent that the amended by-law provides for a forfeiture of contract rights in the event of suicide by the insured while he was sane, it is valid, first, because it invades no vested right of the insured and, second, because it is a fundamental, though unexpressed, part of the original contract that the insured should not intentionally cause his own death. If we assume, therefore, that the original contract and by-laws were silent upon the subject of suicide by the insured while sane, the amended by-law is valid because there can be no such thing as a vested right to commit suicide and for the further reason that it is nothing more than the written expression of a provision which the law had read into the contract at its inception.

But the original contract was not silent in this regard. In his application for insurance the plaintiff's husband expressly stipulated that in case his death should be caused by any

illegal act of his own, all his right, title and interest in the beneficiary fund should revert to the association. At common law, suicide was a crime which was followed by the forfeiture of the offender's property. In this state it is denominated "a grave public wrong" (Penal Code, sec. 173), but owing to the impossibility of reaching the successful perpetrator, no forfeiture is imposed. Plaintiff's husband came to his death in Pennsylvania. In the absence of evidence upon the subject it is to be presumed that the common law prevails there. This view of the case leads to the conclusion that in committing suicide the plaintiff's husband was guilty of a crime, and all crime is illegal. It is, to say the least, doubtful whether the rule of the common law, declaring suicide to be *malum in se*, has been abrogated by the provisions of our Penal Code; but whether we invoke the stern morality of the common law, or the more merciful decree of our own statute which declares suicide to be a "grave public wrong," it may fairly be called an illegal act within the purview of the language of the contract herein, and, if so, the contract is rendered nugatory by force of its own provisions.

Although the foregoing conclusions are decisive of the case, we think the third defense above referred to presents a question that is fairly raised and that ought to be decided for the benefit of all concerned in contracts of this kind. What are the plaintiff's rights, if we treat the case as one in which there is no provision, either in the by-laws or the contract, relating to suicide by the insured while sane? We have already suggested that it is an inherent and fundamental part of every such contract that the insured shall not intentionally take his own life. No act so contrary to good morals and the usual course of human nature should be held to be within the contemplation of the parties to a contract for life insurance, unless it is clearly and unequivocally expressed. The learned counsel for the plaintiff admits the force of the argument as applied to cases in which the estate of the suicide is enhanced by his own wrong, but he insists that it has no application to cases in which the beneficiary named in the policy or certificate

takes the insurance money directly by the terms of the contract and not derivatively ,as, for instance, in the capacity of heir or legal representative of the suicide. It is argued that in the latter case those who take the suicide's estate by mere operation of law are no more entitled to enjoy the fruits of his wrong than he himself would be entitled to profit by his own wrong if living ; but that a different principle applies where the beneficiary has a vested interest in the contract from the instant that it is entered into for his benefit. That is precisely the difference between the contract in the case at bar and an ordinary insurance policy payable directly to a named beneficiary. Under chapter 80 of the Laws of 1840, and the acts amendatory thereof, a wife has an insurable interest in her husband's life which may be made the subject of a contract either directly between the wife and the insurer; or between the latter and the husband for the benefit of his wife. Where such insurance is effected by the husband he is held to be the agent of the wife, and the latter acquires a vested interest in the policy at the moment of its delivery to the insured. (*Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143; *Holmes* v. *Gilman*, 138 N. Y. 382.)

It is undoubtedly true that in the case of a contract valid at its inception such vested rights cannot be affected or impaired by the subsequent fraud or wrong of the insured. But what are the vested rights of a beneficiary under a certificate like the one held by the plaintiff herein ? The argument in her behalf proceeds upon the theory that there is a strict analogy between regular life insurance and co-operative or assessment life insurance, and this is where we think the inherent weakness of plaintiff's case becomes apparent. Under the ordinary life insurance policy taken out by the insured for the benefit of a third person, or by a third person for his own benefit on the life of the insured, the beneficiary takes a vested interest in the policy and the fund payable thereon, from the moment that the policy is delivered. His rights when once thus vested cannot be defeated by the subsequent acts of the assured. The assured has no power of disposition over

the same without the consent of the beneficiary and, upon
the death of the insured, neither his personal representa-
tives nor his creditors have any interest in the proceeds
of such a contract. The principle governing such a con-
tract is well stated by Chief Justice Fuller in *Wash-
ington Central Bank* v. *Hume* (128 U. S. 195, 206) as fol-
lows: " It is indeed the general rule that a policy, and
the money to become due under it, belong, the moment
it is issued, to the person or persons named in it as the bene-
ficiary or beneficiaries, and that there is no power in the
person procuring the insurance by any act of his, by deed or
by will, to transfer to any other person the interest of the
person named." This was the principle enunciated in
*Pingrey* v. *Nat. Life Ins. Co.* (144 Mass. 374) where the
insured had taken out an endowment policy, payable to his
mother in case of his death before the endowment should
accrue. The insured subsequently married, surrendered his
policy and took out a new one payable to his wife. It was there
held that notwithstanding his attempt to vest the proceeds of
the policy in his wife, the mother was entitled thereto. (See,
also, *Barry* v. *Brune*, 71 N. Y. 261.) This principle has
been applied to cases where the assured intentionally took his
life by his own hands. (*Fitch* v. *Am. Pop. L. Ins. Co.*, 59
N. Y. 557; *Morris* v. *S. M. Life Assurance Co.*, 183 Pa.
St. 563; *Seiler* v. *Economic L. Assn.*, 105 Iowa, 87.)

Where, however, the policy is taken out for the benefit of
the insured himself or his estate, the principle does not apply
in case he intentionally takes his own life. In such a case
the persons who take the proceeds of the policy take through
the insured, and not under a contract made with them or for
their benefit as in the cases above referred to. They, there-
fore, stand in the place of the insured and are bound by the
same laws and limitations which would bind the insured
through whom they take. As the insured could not take
advantage of his own wrong, so those who represent him
cannot be permitted to benefit by it. This is the rule laid
down in *Ritter* v. *Mut. Life Ins. Co.* (169 U. S. 139) and

applied in the following cases : *Am. Soc.* v. *Bolland* (4 Bligh, 194–211); *Breasted* v. *Farmers' L. & T. Co.* (8 N. Y. 299); *Borradaile* v. *Hunter* (5 Man. & Gr. 639); *Clift* v. *Schwabe* (3 Com. B. 437); *Bradley* v. *Mut. Ben. Life Ins. Co.* (45 N. Y. 422); *Smith* v. *Nat. Benefit Society* (123 N. Y. 85).

A contract of insurance based upon membership in a benefit society rests upon radically different legal principles than those which govern the ordinary life insurance policy. As stated by Bacon in his work on Benefit Societies (sec. 321), " The chief difference between ordinary contracts of life insurance companies and those usual in benefit societies, is that in the former the policy and documents referred to in it contain the agreement, while in the latter the certificate, together with the charter and by-laws, are to be looked to for the contract." This distinction is clearly emphasized in *Sabin* v. *Phinney* (134 N. Y. 428), where this court said : " The statute under which the corporation was organized, its by-laws, together with the application for and the certificate of membership, constituted the contract which existed between the member and the society, which instruments, construed together, measure the rights of these litigants. Any person who became an appointee in such a certificate took the position subject to the absolute right of the member to substitute a new one at any moment. The rights acquired by the member by virtue of this relation did not amount to a chose in action. He had no interest in the society that was assignable or transferable until some right of action had accrued. The appointee had no vested interest in the sum which might in a contingency become payable on death of the member." (Citing *Hellenberg* v. *Dist. No. 1, I. O. of B. B.* 94 N. Y. 580 ; *Sanger* v. *Rothschild*, 123 N. Y. 577 ; *Brown* v. *Catholic Mut. B. Assn.*, 33 Hun, 263, and *Boasberg* v. *Cronan*, 30 N. Y. S. R. 483.)

So the plaintiff, as the beneficiary named in the certificate herein, took it subject to change in accordance with the constitution and by-laws of the defendant, and, therefore, she acquired no vested interest in either the certificate or the

money to be paid upon it. The foregoing views as to the effect of such a contract as the one at bar do not depend wholly upon the authority of the reported cases, for the statute itself (Ins. Law, sec. 238) provides in express terms that a member of a benefit society has the right to change the beneficiary named in the certificate without the consent of a previously named beneficiary. Plaintiff's rights were subject to revocation; they could be affected by the acts of her husband; they were dependent upon the limitations of the contract by which her husband was bound and, in short, were no greater than those of the husband's personal representatives would have been in an ordinary contract of insurance wherein they might have been named as beneficiaries. It must follow that a beneficiary under a certificate issued by a benefit association, who takes his rights through the insured and subject to the terms of the contract entered into by him, can no more benefit by the wrong of the insured in willfully and intentionally taking his own life than the legal representatives of the insured in an ordinary life insurance policy could under the same conditions.

The case of *Weber* v. *Supreme Tent of K. of M.* (172 N. Y. 490) is not in conflict with this doctrine, for in that case there was a finding that the deceased member took his life while insane, and, as already pointed out, that was a risk which was included in his contract, and, therefore, his beneficiary was entitled to claim the fund. It must be admitted, however, that the views above expressed cannot be reconciled with the decision in *Darrow* v. *Family Fund Socy.* (116 N. Y. 537). In that case the particular phase of the question here discussed was not presented. There the discussion in respect to the effect of the suicide of the member rested upon the case of *Fitch* v. *American Pop. L. Ins. Co.* (59 N. Y. 557), but, as that was an ordinary life insurance contract, it was not an authority upon the facts of the *Darrow* case. To the extent, therefore, that there is a conflict between the *Darrow* case and the case at bar, we feel constrained to overrule the former.

We may add in conclusion that many cases in other juris-

dictions are cited by the learned counsel for the plaintiff in support of the contention that under contracts of insurance valid in their inception, which contain no provision against suicide and are payable directly to nominated beneficiaries, the insurer is liable regardless of the manner in which the insured came to his death. As above indicated, our decision is not at variance with those cases which are based upon ordinary contracts of insurance. Among the cases cited, however, there are some in which the courts of other states have gone to the extent of applying this principle to beneficiary certificates, like the one in the case at bar, and these cases we must decline to follow.

These views would require a reversal of the judgment herein but for the provision in the amended by-law referred to, which entitles the plaintiff to have refunded to her all payments made upon the certificate, together with interest thereon at the rate of three per cent per annum.

Under this provision we will modify the judgment by deducting therefrom the excess over such payments and interest as stated, and, as thus modified, affirm the same, without costs to either party in this court.

PARKER, Ch. J., GRAY, O'BRIEN, CULLEN, JJ. (and BARTLETT, J., in result), concur; MARTIN, J., not voting.

Judgment accordingly.