(109 App. Div. 309)

## McCLOSKEY v. SUPREME COUNCIL, A. L. H.

(Supreme Court, Appellate Division, Second Department.   November 24, 1905.)

**1. INSURANCE—BENEFICIAL ASSOCIATIONS—BY-LAWS—RETROACTIVE EFFECT.**

Where by the express terms of both insured's application for insurance in a beneficial association and his certificate he agreed to conform to all laws and rules then in force, or which might be thereafter adopted, and the consideration of his certificate was stated to be his full compliance with all the by-laws of the order then existing or thereafter adopted. by-laws subsequently enacted, scaling his certificate in case of death from $5,000 to $2,000, and providing a short limitation period for the bringing of suits thereon, when regularly adopted, were retroactive in operation, and became effective against insured and his beneficiaries, except as to rights which had become fixed as to the insured and his beneficiaries by the original contract.

**2. SAME—VESTED RIGHTS.**

Where a member of a beneficial association was authorized by law to change his beneficiaries without their consent by complying with certain rules of the order, such beneficiaries had no vested interest in the sum which might become payable to them in case the member died without changing the beneficiaries, so as to entitle them to object to the validity of a by-law binding on the member, reducing the amount payable under the. certificate.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1948, 1949.]

**3. SAME—MEMBERS—ESTOPPEL.**

Where a member of a beneficial association, for 17 months after his certificate was scaled from $5,000 to $2,000 by a by-law duly enacted, paid reduced assessments, which were much less than he would have paid

for benefits of $5,000, during which time 26 assessments were paid, without making any protest indicating his dissent from the action of the society, he would be held to have assented thereto.

**4. SAME—FRAUD—FINDINGS—EVIDENCE.**

In a suit on a certificate of a beneficial association, a finding that for the purpose of cheating and defrauding plaintiff's assignors defendant falsely represented to them that a certain by-law had been passed by defendant scaling the certificate from $5,000 to $2,000, etc., was not supported by evidence that one of defendant's officers stated to one of the beneficiaries that the assessments were lowered, and they were obliged to reduce the $5,000 certificate to $2,000 or go into bankruptcy, or give it to a receiver and get nothing.

**5. SAME—BY-LAWS—REASONABLENESS.**

Where a beneficial association, doing an insurance business on the assessment plan, was about to become a bankrupt, the passage of by-laws scaling existing certificates, making a corresponding reduction in assessments, and creating a short limitation for actions against the association, was not unreasonable.

**6. SAME—RELEASE—SETTING ASIDE—FRAUD.**

A certificate in a benefit association provided for a compliance by the insured with any by-laws of the association thereafter adopted. A by-law was thereafter passed reducing insured's certificate in case of death from $5,000 to $2,000, and at the same time the assessments upon insured were reduced pro rata. The insured continued to pay the assessments for some 17 months. On his death the beneficiaries executed a release of the association on the payment by it to them of $2,000. At the time nothing was said to them as to the existence of any amended by-law, or that any amended by-law it had adopted was valid, or in any way affected the rights of the beneficiaries. *Held*, that the fact that at the time of such release nothing was said by the officers as to a decision of the court holding the by-laws scaling the society's outstanding certificates void was no ground for setting aside the release on a claim of fraud.

Appeal from Special Term, Kings County.

Action by Julia McCloskey against the Supreme Council, American Legion of Honor. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

Henry A. Powell, for appellant.

Laurence G. Goodhart, for respondent.

RICH, J. On November 3, 1882, one James D. Hall, then being a member in good standing of the order known as the American Legion of Honor, made an application in writing to St. Johns Council No. 391 for the benefits of a sixth degree membership, to be paid upon his decease to his mother, Catherine Hall. The only benefit certificate appearing in the record to have been issued to him is dated February 28, 1891, and is payable, one-half to each of his sisters, Eliza and Julia Hall, the assignors of the plaintiff. It is presumable that a certificate was issued at the time of the application payable to the mother, which nine years later was superseded by the certificate payable to the sisters. The application contained the following clause:

"I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which may hereafter be adopted by the same."

The consideration stated in the certificate issued is:

"The full compliance with all the by-laws of the Supreme Council, A. L. of II., now existing or hereafter adopted, and the conditions herein contained."

The appellant is a fraternal benefit society, representative in its character, delegates being elected from local councils to the grand councils and from the latter to the Supreme Council, its highest body.   Its constitution at the time Hall became a member and at the time said certificate was issued contained the following, among other provisions, under the title "The Objects of the Order":

"(5) To establish a benefit fund, from which, on the satisfactory evidence of the death of a beneficial member of the order, who has complied with all its lawful requirements, a sum not exceeding five thousand dollars shall be paid to the family, orphans, or dependents, as the member may direct."

Its laws provided:

"Five thousand dollars shall be the highest amount paid by this order on the death of a member.   This 'sum shall be paid on the death of every sixth degree member  *  *  *  provided, however, that should a death occur when one assessment on each member would not amount to five thousand dollars, then the sum paid shall be a proportionate amount of one assessment on each member in good standing in the order at the date of death, according to the degree of the deceased member, and such amount shall be all that can be claimed by any one.  *  *  *  Applicants shall enter upon their application the name or names of the members of their family or those dependent upon them to whom they desire their benefit paid, and the same shall be entered in the benefit certificate by the Supreme Secretary, subject to such future disposal of the benefit among their dependents as they thereafter direct. Members may at any time, when in good standing, surrender their certificate, and have a new one issued, payable to such beneficiary or beneficiaries dependent upon them as they may direct, upon the payment of a certificate fee of fifty cents."

Neither the  constitution nor by-laws contained a limitation of the time for commencing an action on the certificate.   In the year 1899 the defendant added to its by-laws one in the following language:

"No action at law or in equity in any court shall be brought or maintained on any clause or claim arising out of any membership or benefit certificate, unless such action is brought within one year from the time when such action accrues.   Such right of action shall accrue 90 days after all proofs called for, in case of death of a member, shall have been furnished."

And in August of that year the defendant amended its by-law establishing the amount to be paid on the death of a member, such amendment to take effect on October 1, 1900, so that it read as follows:

"Two thousand dollars shall be the highest amount paid by the order on the death of a member upon any benefit certificate heretofore or hereafter issued.   This sum shall be paid on the death of every member holding a benefit certificate of two thousand dollars or over."

Hall paid all the assessments called for by defendant down to October 1, 1900, upon the basis of benefits to the amount of $5,000, each assessment being for $24, and thereafter to the time of his death paid assessments called for on the basis of benefits of $2,000, each assessment being for $9.60, without protest or complaint against the action of the society in the amendment of such law, and its consequent effect on his certificate.   He died March 3, 1902, in good standing.   Proofs of his death were filed with defendant on or before July 10, 1902.   In April, 1901,

in an action brought by one Langan against the American Legion of Honor, it was held by the Special Term that the amended law reducing payments of $5,000 benefit certificates of deceased members to $2,000 was inoperative and void. The defendant learned of this decision May 3, 1901. Prior to July 18, 1902, officers of the local council of defendant of which deceased was a member had a conversation with the sisters (beneficiaries) of said Hall, Julia Hall Loader and Eliza Hall, and the record shows that it was stated to them that:

"The assessments were lowered, and they were obliged to reduce the five thousand dollar certificates to two thousand dollars, or go into bankruptcy, or give it to a receiver and get nothing. Q. (By· the Court) : He offered to give you—asked you to take—two thousand dollars in full for the loss on the policy? A. He did not say anything about being in full to me. He did not propose to give me any more; but he proposed to give me two thousand dollars. * * * Q. Did Mr. Rankin or Mr. Franklin or any person say to you there had been any decision at all declaring or adjudging that the reduction of by-laws was illegal? * * * A. No. By the Court: * * * He did not tell me that any case had been decided holding that the reduction was void. He did not tell me about the Langan Case being decided. Q. Did he tell you of passing the by-laws reducing these benefits? A. He did not say anything to me at all."

As the result of the negotiations then had, the defendant on July 10th issued a written instrument in the following language:

"$2,000.00                                                    No. 14,796
"American Legion of Honor.
"Benefit Fund.

"Boston, July 10, 1902.
"Pay to the order of Eliza Hall and Julia Hall, sisters of late James D. Hall, ½ each, two thousand dollars, in accordance with benefit certificate No. 152,700 of James D. Hall, late third degree member of Acme Council No. 3, A. L. of H., located at Brooklyn, state of New York.
                                      "Wm. N. Davenport.
                                      "Supreme Commander.
                                 "Adam Warnock,
                                      "Supreme Secretary.
"[Seal.]                           Geo. W. Kendrick, Jr.,
                                      "Supreme Treasurer.
"To Third National Bank, Philadelphia, Pa."

—which the beneficiaries received, indorsed on the back as follows: "Eliza Hall, Julia Hall (Julia Hall Loader), sisters of the late James D. Hall. [Seal.]," and the draft was paid by the bank on which it was drawn July 24, 1902. Under date of July 18, 1902, the beneficiaries indorsed upon the benefit certificate the following, and delivered said certificate to the defendant for cancellation:

"Undersigned beneficiary named in the within benefit certificate hereby acknowledges having received the amount herein agreed to be paid, and this certificate is hereby surrendered to the Supreme Council, American Legion of Honor, for cancellation.
"Dated July 18th, A. D. 1902.                    Julia Hall Loader.
                                                 "Eliza Hall."

—And also signed and delivered the following release:
"Death No. 14,796.
                              "Release.
"Know all men by these presents, that we, Eliza Hall and Julia Hall Loader, beneficiaries of the late James D. Hall, do hereby remise, release, and forever

discharge the Supreme Council, American Legion of Honor, its successors and assigns, of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims, and demands whatsoever, in law or equity, which against the said Supreme Council, American Legion of Honor, I ever had, now have, or which my heirs, executors, administrators, or assigns, or any of them, hereafter can, shall, or may have for or by reason of any cause, matter, or thing whatsoever, from the beginning of the world to date of these presents.

"In witness whereof, we have hereunto set our hands and seals this eighteenth day of July, in the year of our Lord one thousand nine hundred and two.                                           Julia Hall Loader. [L. S.]
                                                        "Eliza Hall.    [L. S.]

"Signed, sealed, and delivered in the presence of:
                                "Geo. B. Heald.   [L. S.]
                                "R. R. Franklin.  [L. S.]
                                "Thomas F. Silliman.  [L. S.]"

On July 8, 1903, said beneficiaries executed and delivered to the respondent the following instrument:

"In consideration of the sum of one dollar to us in hand paid by Julia McCloskey, wife of Felix R. McCloskey of the borough of Brooklyn, state of New York, we, Eliza Hall and Julia Hall Loader, of the borough of Manhattan, state as aforesaid, do hereby sell, assign, and transfer unto the said Julia McCloskey all our right, title, and interest in and to a certain policy or certificate of insurance issued by the American Legion of Honor to James D. Hall, the late brother of said Julia Hall Loader and Eliza Hall, which said policy or certificate is dated ———, and is for the sum of five thousand ($5,000) dollars, and is payable to us as beneficiaries, and in and to any and all causes of action thereunder. And we do hereby appoint her, the said Julia McCloskey, our true and lawful attorney to collect the same, by suit or otherwise, and in our name or otherwise.

"In witness whereof, we have hereunto set our hands and seals this 8th day of July, 1903.                                    Eliza Hall.
                                                "Julia Hall Loader.

"In the presence of Jos. Isaacs."

Thereafter, and on October 24, 1903, this action was commenced. The trial court vacated and set aside the indorsement made on the benefit certificate, the surrender of said certificate and said release, declared them null and void, and directed judgment for the plaintiff for $3,320, which was later by stipulation reduced to $3,166,83. From the judgment entered in accordance with this direction, this appeal is taken.

We are called upon to determine, among other questions, the legal effect upon James B. Hall and the beneficiaries named in his benefit certificate, the plaintiff's assignors, of the amendment adopted by the appellant to its laws reducing all outstanding certificates exceeding $2,000 in amount to $2,000, and the provision requiring the commencement of an action within one year after the cause of action accrued, which amendment was adopted after the issuance to Hall of the certificate upon which this action is based; and in the consideration of this question we must keep in mind the distinction between the legal rights of the holder of an insurance policy in an insurance company and the holder of, or beneficiary named in, a benefit certificate in a fraternal order. This case was decided by the trial court upon the principle that the appellant could not by action taken subsequent to the issuance of the benefit certificate to Hall adopt an amendment changing the provisions of such certificate by reducing the amount payable, or limit-

ing the time within which an action to compel its payment could be commenced, because the result of such an action would be to impair the vested rights of the beneficiaries named in the certificate; and it was assumed that such beneficiaries had a fixed and vested right both in the certificate and in the sum required to be paid by its provisions.

The underlying principle of such decision is sustained by many late authorities, including decisions of this court, and is too well established to be the subject of controversy in cases where it is applicable; but I do not think it applies to or governs the rights of the parties to this action, for the reason that there is absent the essential elements upon which it rests, viz., a vested right in the beneficiaries in the certificate to the extent of full payment, of which they could not be deprived without their consent. The constitution and laws of the appellant, the application, and the certificate constitute the contract which existed between the appellant and Hall, and, construed together, measure the rights of these litigants. The beneficiaries are not shown to have paid any part of the expenses incident to the membership of their brother in the society, or of the assessments made against him. By the express terms of both the application and certificate, Hall agreed to conform in all respects to the "laws, rules, and usages of the order now in force, or which may hereafter be adopted," and the consideration of the certificate is therein stated to be his "full compliance with all the by-laws of the Supreme Council, A. L. of H., now existing or hereafter adopted." Under these conditions, all by-laws regularly adopted by the appellant became retrospective as well as prospective in their operation and effect upon Hall and his beneficiaries, except as to rights which had become fixed or vested by the terms of the original contract. Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347. If the rights referred to were not vested in Hall or his beneficiaries, the amendments recited could legally be adopted by the society, and were binding upon its members and their appointees. It was held in Sabin v. Phinney, 134 N. Y. 423, 31 N. E. 1087, 30 Am. St. Rep. 681, in an action upon a certificate of membership issued by a fraternal order to one Sabin, carrying with it death benefits payable to his wife, the plaintiff, which Sabin subsequently caused to be changed and made payable to Phinney, the defendant, that:

"The relation which existed between Sabin and the society subjected him to certain burdens and entitled him to certain benefits during the continuance of his membership, and if he died while in good standing in the order, his appointee became entitled to a certain sum. This relation could be terminated at any time at the will of the member, and the appointee was changeable from time to time as he might elect. If we choose to term this relation a contract, and it was established by agreement, the contract gave the right of change of the beneficiary with or without reason. Any person who became an appointee in such a certificate took the position subject to the absolute right of the member to substitute a new one at any moment. The rights acquired by the member by virtue of this relation did not amount to a chose in action. He had no interest in the society that was assignable or transferable until some right of action had accrued. The appointee had no vested interest in the sum which might in a contingency become payable on death of the member."

All of the facts upon which the court based this conclusion exist in the case at bar. It is inferable from the facts here that Hall assented

to the change made in the by-law. For 17 months after it took effect and became operative, he paid the reduced assessments, which were $374.40 less than he would have paid for the benefits of $5,000. Twenty-six assessments were made during that time. It necessarily follows that on 26 different occasions before his death his attention was directed by the reduced assessments to the fact that his benefits had been reduced correspondingly, notwithstanding which he is not shown to have made any complaint or protest, or taken any action indicating his dissent from the action of the society. In this the case at bar is distinguishable from the Langan case, in which the member refused to assent to the action of the society, and tendered the assessments upon the basis of an insurance of $5,000, notifying it that he would keep the tender of payment of all assessments legally called in the future good on that basis. Langan v. Supreme Council, Am. L. of H., 174 N. Y. 266, 66 N. E. 932. In Shipman v. Protected Home Circle, supra, an action based on a certificate of a co-operative life insurance company, which amended its by-laws after the issuance of the certificate, the court again considered this question, and Judge Werner, after stating the principles applicable to holders of policies of insurance, says:

"It is undoubtedly true that in the case of a contract valid at its inception such vested rights cannot be affected or impaired by the subsequent fraud or wrong of the insured. But what are the vested rights of a beneficiary under a certificate like the one held by the plaintiff herein? The argument in her behalf proceeds upon the theory that there is a strict analogy between regular life insurance and co-operative or assessment life insurance, and this is where we think the inherent weakness of plaintiff's case becomes apparent. Under the ordinary life insurance policy taken out by the insured for the benefit of a third person, or by a third person for his own benefit on the life of the insured, the beneficiary takes a vested interest in the policy and the fund payable thereon from the moment that the policy is delivered. His rights when once thus vested cannot be defeated by the subsequent acts of the assured. The assured has no power of disposition over the same without the consent of the beneficiary, and upon the death of the insured, neither his personal representatives nor his creditors have any interest in the proceeds of such a contract. * * * A contract of insurance based upon membership in a benefit society rests upon radically different legal principles than those which govern the ordinary life insurance policy."

After citing and quoting from Bacon on Benefit Societies and the case of Sabin v. Phinney, to which I have hereinbefore referred, the opinion continues:

"So the plaintiff, as the beneficiary named in the certificate herein, took it subject to change in accordance with the constitution and by-laws of the defendant, and, therefore, she acquired no vested interest in either the certificate or the money to be paid upon it. The foregoing views as to the effect of such a contract as the one at bar do not depend wholly upon the authority of the reported cases, for the statute itself (Insurance Law, Laws 1892, p. 2025, c. 690, § 238) provides in express terms that a member of a benefit society has the right to change the beneficiary named in the certificate without the consent of a previously named beneficiary. Plaintiff's rights were subject to revocation; they could be affected by the acts of her husband; they were dependent upon the limitations of the contract by which her husband was bound; and, in short, were no greater than those of the husband's personal representatives would have been in an ordinary contract of insurance, wherein they might have been named as beneficiaries."

96 N.Y.S.—23

In the case at bar the facts are substantially the same. The application and certificate contain the same provisions as to the by-laws and constitution of the two societies, and the principles there enunciated control the disposition of the issues presented here to the extent of requiring a decision that the amendment adopted and limitation added, if valid, regular, and in accordance with the provisions of appellant's constitution, were not void or inoperative because of rights in Hall or his beneficiaries which had become fixed or vested in them by the terms of the original contract. In the absence of evidence or a finding to the contrary, we must assume such validity and regularity. Brundin v. Supreme Council, 13 App. Div. 147, 149, 42 N. Y. Supp. 1043; Shipman v. Protected Home Circle, supra. They became part of the contract between appellant and Hall, bound him and his beneficiaries, and therefore require a reversal of this judgment.

There is another reason why the judgment cannot stand. Although the complaint alleged, and the trial court found as fact, that:

"With the purpose of cheating and defrauding the said Eliza Hall and Julia Hall Loader, and to induce them to surrender the said policy or benefit certificate aforesaid for less than its face value, and to discharge the liability of this defendant thereon, the defendant falsely stated and represented to said Eliza Hall and Julia Hall Loader that a certain by-law had been passed by the defendant providing that the amount payable under the aforesaid benefit certificate or policy of insurance held by the said James D. Hall, to wit, the sum of five thousand ($5,000) dollars, had been reduced by the defendant to the sum of two thousand ($2,000) dollars, was at said time, to wit, at the death of said James D. Hall on the second day of March, 1902, a good, valid, subsisting, legal, and existing by-law, and in full force and effect in the state of New York, and that it applied to and affected said certificate; that the said by-law, as amended, was in all respects legal and authorized and binding upon the plaintiff, and applied to and affected the said benefit certificate held by her, and that the said amended by-law was in full force and effect; that the said representations. and each of them, so made, as aforesaid, by the defendant were false, and were by it known to be false, and were known to be false by the officers of the defendant, who made the same when the same were made."

Such and similar statements and representations are found by the court to have been made in his other findings of fact. There was no evidence given which sustains such findings; on the contrary, the evidence expressly negatives the existence of such facts. The only witness testifying upon the subject was Eliza Hall, one of the beneficiaries. The only statement testified to by her as having been made was that "the assessments were lowered, and they were obliged to reduce the five thousand dollar certificates to two thousand dollars, or go into bankruptcy, or give it to a receiver and get nothing." The witness testified that nothing was said to her about the passing of the amended by-law or its existence. The evidence not only fails to support the findings, but there is no proof that the statement she says was made was not true in fact. The reduction was the formal act of the appellant, under legal advice, and at a time when a decision of this state (Hutchinson v. Supreme Tent, etc., 68 Hun, 355, 22 N. Y. Supp. 801) held such action to be legal. It was three years after the amendment had been adopted when the Court of Appeals, in Weber v. Supreme Tent of K. of M., 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753, announced a different doctrine, where the amendment was held to be unreason-

able, and to deprive the insured of the benefit of his contract. The amendments under consideration in this case cannot be said to be unreasonable. The one reducing the amount to be paid on a $5,000 certificate operated to reduce the assessments made after it took effect in the same ratio that the payment was reduced, which seems to have been perfectly satisfactory to the member whose certificate it affected; and in the Weber Case it did not appear, as it does in the case at bar, that by the terms of the original contract the rights of the member and his appointees were expressly dependent upon the by-laws of the society then existing or thereafter adopted.

There is no evidence in the record establishing fraud as the result of any representations or statements made by the appellant or its officers, and the findings of fact referred to are wholly without sustaining evidence. It is true that defendant's representatives did not at the time of the settlement disclose to the beneficiaries that the Special Term had held in the Langan Case that appellant's amended by-law of 1900, reducing the amount payable on outstanding $5,000 certificates to $2,000, was void; but it is equally true that the defendant had not asserted the existence of an amended by-law, or that any amended by-law it had adopted was valid, or in any manner affected the rights of the beneficiaries, or constituted a legal right of the society to insist that the beneficiaries were entitled to the payment of $2,000 only on their certificate. An entirely different case is presented here than was before this court in Simon v. Supreme Council, 91 App. Div. 390, 86 N. Y. Supp. 866, and the decision in that case is not an authority for holding that defendant's failure to advise the assignors of respondent, at the time of the settlement, of the decision in the Langan Case constituted fraud entitling the plaintiff to the relief she obtained in the trial court. No duty rested upon the appellant, under the circumstances proven in this action, to inform the beneficiaries of the decision in the Langan Case; consequently, fraud cannot be predicated thereon, and such omission does not present a case entitling plaintiff to equitable relief.

The exceptions taken to the findings of fact and of law based thereon were well taken.

The fraud alleged in the complaint not having been established, the disposition of the appeal is controlled by the decision of the Court of Appeals in Simons v. American Legion of Honor, 178 N. Y. 263, 70 N. E. 776, and, the evidence establishing all of the essential elements of an accord and satisfaction, within the principles established by that decision, this action cannot be maintained.

The judgment appealed from must be reversed, and a new trial granted: costs to abide the event.

JENKS, J., concurs. HIRSCHBERG, P. J., and BARTLETT and MILLER, JJ., concur in the result, on the ground that there was no evidence given establishing the scope and effect of the decision in the Langan Case, and hence no basis for a finding of fraud.