H. SOPHIA DAVIS *vs.* SUPREME COUNCIL OF ROYAL ARCANUM.

Suffolk.      March 5, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Fraternal Beneficiary Corporation. Insurance,* Life. *Suicide. Contract,* Construction. *Evidence,* Best and secondary.

In an action on a certificate of a fraternal beneficiary corporation for a death benefit, where the certificate contains no provision as to death by suicide and where by the terms of the contract the beneficiary could be changed by the member at any time before his death, the plaintiff cannot recover if the member voluntarily killed himself while he was of sound mind, it being an implied condition of the contract that the member should not take his own life.

Whether the rule referred to in *Daniels* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 393, 397, that, if death is the result of volition by one who has a conscious purpose to end his life and has intelligence to adapt means to ends, it is his own act within the meaning of a policy of life insurance which excepts from the terms of the contract cases of death by suicide or by the hand of the assured, even though he is so far insane as not to be morally responsible for his conduct, could be applied to a policy or certificate of insurance which contains no provision as to death by suicide, it here was not necessary to decide, because the trial judge found as a fact that the insured committed suicide while he was of sound mind.

In an action on a certificate of a fraternal beneficiary corporation for a death benefit, where one of the questions was whether the member whose life was insured was insane when he shot himself or whether he was acting intelligently with a motive to escape punishment for crime and perhaps to obtain through his insurance policies a large amount of money for his family, the defendant introduced evidence that for ten or twelve years the insured had been engaged in a series of embezzlements of sums of money entrusted to him to lend for the owners, for which he was accustomed to return fictitious and forged notes and mortgages. Against the objection and subject to the exception of the plaintiff, two witnesses, who had examined the books of account of the insured, were permitted to testify, without producing the books, what they had found them to contain, the witnesses having no knowledge of the matters in question except that which they had obtained from their examination of the books and from their investigations. *Held*, that, assuming that the books were competent evidence as to a part of the conduct of the insured to be considered in connection with his later conduct as bearing upon the question whether he was insane, the contents of the books could not be proved by oral evidence against the objection of the plaintiff without producing the books themselves.

CONTRACT for $3,000 by the widow of Edmund Davis, late of Hyde Park, upon a benefit certificate issued to Davis by the defendant, a fraternal beneficiary corporation, in which the plaintiff was named as beneficiary. Writ dated August 14, 1897.

The substituted answer contained a general denial, and further alleged that the insured, Edmund Davis, came to his death by his own voluntary act by shooting himself, that when the shooting occurred Davis was of sound mind and understood fully the nature and consequence of the act, and that by reason of this act his certificate of membership became null and void.

In the Superior Court the case was tried before *Crosby*, J. The certificate sued upon, omitting the signatures, was as follows :

" $3,000.
" Royal Arcanum.
" Benefit Certificate.

" This certificate is issued to     Edmund Davis     a member of Neponset Council No. 136, Royal Arcanum, located

at Hyde Park, Mass., upon evidence received from said Council that he is a contributor to the Widows and Orphans' Benefit Fund of this Order; and upon condition that the statements made by him in his application for membership in said Council, and the statements certified by him to the Medical Examiner, both of which are filed in the Supreme Secretary's office, be made a part of this contract, and upon condition that the said member complies, in the future, with the laws; rules and regulations now governing the said Council and Fund, or that may hereafter be enacted by the Supreme Council to govern said Council and Fund.

" These conditions being complied with, the Supreme Council of the Royal Arcanum hereby promises and binds itself to pay out of its Widows and Orphans' Benefit Fund,

" To                H. Sophia Davis (wife)

a sum not exceeding three thousand dollars

in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this Certificate, provided that said member is in good standing in this order at the time of his death.

" In witness whereof the Supreme Council of the Royal Arcanum has hereunto affixed its seal and caused this Certificate to be signed by its Supreme Regent, and attested and recorded by its Supreme Secretary, at Boston, this 23rd day of August, A. D. 1878."

The following facts appeared in evidence or were admitted to be true:

Edmund Davis, the insured, became a member of Neponset Council No. 136, Royal Arcanum, located at Hyde Park, on August 23, 1878. He died on July 8, 1897, having come to his death at his own hands by shooting himself through the head at his home in Hyde Park. At the time of his death he was a member of the order in good standing and had complied with the laws, rules and regulations governing the council and benefit fund. Due and satisfactory notice and evidence of his death was given to the defendant. The Widows and Orphans' Benefit Fund contained a sum equal to the amount sued for, which was available for the payment of any sum found due the plaintiff. The con-

stitution and by-laws of the defendant, governing the order at the time of the death of the insured, contained no reference to the matter of suicide by a member.

The following by-laws of the defendant were in force at the time of the death of Davis:

" By-Laws of Royal Arcanum 1878, Law III.
                    Benefit Certificates.

" Sec. 3. A member may at any time, when in good standing, surrender his certificate and have a new one issued by paying a fee of fifty cents.

" By-Laws of Royal Arcanum, 1896, Chapter IV.
                    Change of Beneficiary.

" How changed.

" Sec. 333. A member may, at any time, when in good standing, pay a fee of fifty cents, make a written surrender of his Benefit Certificate, and direct that a new certificate be issued to him, payable to such beneficiary or beneficiaries as such member may designate, in accordance with the Laws of the Order."

The plaintiff asked the judge to make the following rulings:

1. In the absence of any provision in the benefit certificate in suit, or in the laws, rules and regulations of the defendant council, affecting the rights of beneficiaries thereunder, declaring the certificate to be void should the insured take his own life, the fact that the insured took his life is not a defence to a suit on the certificate by this beneficiary.

2. In the absence of any provision in the benefit certificate in suit, or in the laws, rules and regulations of the defendant council, affecting the rights of beneficiaries thereunder, declaring the certificate to be void should the insured commit suicide, the fact that the insured committed suicide is not a defence to a suit on the certificate by this beneficiary.

3. If at the time the insured took his own life he was insane, such self-destruction will not prevent a recovery upon this certificate by this beneficiary.

4. If at the time the insured took his own life his reasoning faculties were so far impaired by insanity that he was unable to understand the moral character of his act, even if he did understand its physical nature, consequence and effect, such self-

destruction will not prevent a recovery upon this certificate by this beneficiary.

5. Upon all the evidence the plaintiff is entitled to recover upon the certificate in suit.

The judge refused to make any of these rulings.

At the request of the defendant the judge made the following special findings of fact:

First. The insured, Edmund Davis, came to his death at his own hands by shooting himself through the head at his home in Hyde Park, on the eighth day of July, 1897.

Second. At the time the insured shot himself he was of sound mind.

Third. Even if the insured was not of sound mind, still his death was the result of volition by one who had a conscious purpose to end his life, having intelligence to adapt means to accomplish his purpose.

Fourth. The death of the insured was not caused in the madness of delirium and was the result of the will and intention of the insured, adapting the means to the end and contemplating the physical nature and effect of the act.

Fifth. Under the constitution and by-laws of the defendant society the insured at all times during his membership had the power to change the beneficiary personally designated by him, with the consent of the defendant, the by-laws containing such provision being General Laws, Chap. IV., Sec. 333.

At the request of the defendant the judge also made the following rulings of law, to which the plaintiff excepted, as well as other rulings to which no exception was taken:

Second. The plaintiff's designation as beneficiary in the certificate was subject to change in accordance with the constitution and by-laws of the defendant society, and the plaintiff thereby acquired no vested interest in either the certificate or the money to be paid upon it until the death of the insured.

Fourth. Even though there is no provision in the certificate or the by-laws that the contract shall be void if the insured commits suicide or dies of his own hand, yet the plaintiff in this action cannot recover if the insured, being sane, took his own life.

Fifth. If the death of the insured was the result of volition

.by one who had a conscious purpose to end his life and who had intelligence to adapt means to ends, it was his own act and avoids the certificate sued upon, even though he was so far insane as not to be morally responsible for his conduct.

"At the trial it was admitted that Davis was carrying $50,000 of life insurance, of which $40,000 proved to be valid." There was evidence tending to show that during his lifetime he had obtained large sums of money by giving bogus mortgages. The evidence introduced by the defendant in regard to the contents of Davis's books of account, which is described in the opinion, was admitted by the judge against the objection of the plaintiff and subject to her exception.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*F. H. Williams*, for the plaintiff.

*V. J. Loring*, (*J. H. Butler* with him,) for the defendant.

KNOWLTON, C. J.    This is an action of contract, brought by the beneficiary designated in a certificate of membership issued by the defendant to the plaintiff's husband. The defendant is a fraternal beneficiary order organized under the laws of this Commonwealth. The certificate contains no provision in regard to death by suicide. The insured committed suicide by shooting himself while he was of sound mind. The principal question before us is whether, under these facts, the plaintiff is entitled to recover.

It is settled upon sound principles, and by a great weight of authority, that, even if an ordinary policy of life insurance contains no provision in regard to death by suicide, there is no liability under it to the legal representatives of the insured, if his death is intentionally caused by himself when of sound mind. *Hatch* v. *Mutual Ins. Co.* 120 Mass. 550. *Ritter* v. *New York Ins. Co.* 169 U. S. 139. *Burt* v. *Union Central Ins. Co.* 187 U. S. 362. *Shipman* v. *Protected Home Circle*, 174 N. Y. 398. *Supreme Commandery* v. *Ainsworth*, 71 Ala. 436. *Hopkins* v. *Northwestern Life Assurance Co.* 94 Fed. Rep. 729, 731. *Amicable Society* v. *Bolland*, 4 Bligh, (N. S.) 194, 211.

The reason for the rule is found in the terms of the contract, and the implication drawn from the nature of the transaction, between the parties. As was said in *Ritter* v. *New York Ins. Co.*,

169 U. S. 139, 153, "It is not contemplated by a policy taken out by the person whose life is insured and stipulating for the payment of a named sum to himself, his executors, administrators or assigns, that the company should be liable, if his death was intentionally caused by himself when in sound mind. When the policy is silent as to suicide, it is to be taken that the subject of the insurance, that is, the life of the assured, shall not be intentionally and directly, with whatever motive, destroyed by him when in sound mind. To hold otherwise is to say that the occurrence of the event upon the happening of which the company undertook to pay, was intended to be left to his option. That view is against the very essence of the contract." It is an implied condition of the policy that the insured shall not take his own life. *Weber* v. *Knights of Maccabees*, 172 N. Y. 490, 493. In the words of the court in *Shipman* v. *Protected Home Circle*, 174 N. Y. 398, 405, "It is a fundamental, though unexpressed, part of the original contract that the insured should not intentionally cause his own death." This is equivalent to saying that as a matter of construction of the contract, there is, in the promise to pay on the death of the insured, an implied exception of death by his own intentional act while he is of sound mind. It is said in the cases that it would be against public policy to make or enforce a contract to pay one's estate a sum of money on his death by suicide. See *Ritter* v. *New York Ins. Co.* 169 U. S. 139, 154. This is a statement, in another form, of the reason for holding that, in a policy that is silent as to suicide, death by suicide is impliedly excepted from the conditions which create a liability.

The plaintiff contends that, if this is so as to an attempted collection by the executor or administrator of the insured, it is not so when the policy is payable to a beneficiary. On this point the decisions are conflicting. In the present case, under the terms of the contract, the beneficiary may be changed at any time by the insured. It is often said that, under such a certificate, the beneficiary has no vested interest in the money to be paid, but only an expectancy. *Marsh* v. *American Legion of Honor*, 149 Mass. 512. *Anthony* v. *Massachusetts Benefit Association*, 158 Mass. 322, 324. *United Order of Golden Cross* v. *Merrick*, 165 Mass. 421, 425. *Shipman* v. *Protected Home Circle,*

174 N. Y. 398. The precise question before us is discussed at length in the case last cited, in which it is held that, in an association of this kind, the beneficiary takes the certificate subject to change without his consent, in accordance with the constitution and by-laws of the association, and has no vested interest in either the certificate or the money to be paid under it. It is accordingly held that the beneficiary, under such a certificate, has no greater rights than the executor or administrator of the insured would have if there were no beneficiary. See *Hartman* v. *Keystone Ins. Co.* 21 Penn. St. 466. The cases which rest on a contrary doctrine do not seem to us to be founded on sound principles. They depend on considerations which are not applicable to a contract of this kind. *Parker* v. *Des Moines Life Association*, 108 Iowa, 117. *Patterson* v. *Natural Premium Ins. Co.* 100 Wis. 118. *Rawson* v. *Milwaukee Ins. Co.* 115 Wis. 641. The writers of the opinions in these cases seem to ignore the fact that, by the true construction of the contract, as between the association and the insured, there is an implied exception of death by suicide from the statement that death creates a liability, and that as the contract as to the person to be paid is all the while in the control of the insured up to the time of his death, it should not be treated as larger and more beneficial in the hands of the beneficiary than it is in the hands of the insured. Of course an insurance company may make a contract with an assignee of an ordinary policy of life insurance, or with a creditor or other person to whom a policy is payable as owner, such as will make the company liable to him for a death by suicide. But this is not such a case. It is questionable whether some of the cases have not gone too far in holding ordinary life insurance companies liable to beneficiaries for death by suicide when the policy was silent on that subject. It is true, as is said in some of these cases, that the insured cannot deprive a beneficiary of his rights by his subsequent misconduct. But it is equally true that if the original contract impliedly excepts from its provisions cases of death by suicide, and if that is its true construction when considered in reference to the beneficiary as well as in reference to the insured, there is no more liability to the beneficiary for such a death than there would be to the executor

or administrator of the insured. The judge rightly refused the plaintiff's different requests for rulings that she might recover under her special rights as a beneficiary.

Under the finding of the judge that " at the time the insured shot himself he was of sound mind," none of the other exceptions to the rulings and refusals to rule on the requests for instructions are now material. If the findings of fact are the same at the next trial, probably the questions raised by these requests will not be raised again, and if they are raised, they will not be material.

The defendant contended at the trial, and the judge ruled, that " if the death of the insured was the result of volition by one who had the conscious purpose to end his life, and who had intelligence to adapt means to ends, it was his own act, and avoids the certificate sued upon, even though he was so far insane as not to be morally responsible for his conduct." This is an application of the law of Massachusetts, referred to in *Daniels* v. *New York, New Haven, & Hartford Railroad*, 183 Mass. 393, 397, to a policy that is silent as to death by suicide, and a ruling that, in such a policy, there is an implication that the death referred to does not include an intentional death intelligently caused by one's own act, even if he is so far insane as not to be morally responsible for his conduct. While there is much force in this contention of the defendant, the question presented is not free from difficulty, and we do not think it necessary to decide it.

There was one error at the trial that compels us to sustain the exceptions. As bearing upon the question whether the insured was insane when he shot himself, or was acting intelligently, with a motive to escape punishment for crime, and perhaps to obtain from his policies a large amount of money for his family, the defendant introduced evidence tending to show that, for ten or twelve years, he had been engaged in a series of embezzlements of sums of money entrusted to him to lend for the owners, for which he was accustomed to return fictitious and forged notes and mortgages. Seemingly his books of account furnished much evidence of this. Subject to the plaintiff's exception, two witnesses were permitted to testify to what these books showed, without producing the books themselves, or hav-

ing any knowledge of the matters, except that which they obtained from their examination of the books and from their investigations. Assuming that the books were competent evidence as to a part of the conduct of the insured, to be considered in connection with his later conduct as bearing upon the question whether he was insane, the contents of the books could not be proved by parol evidence, against the plaintiff's objection. The books themselves should have been produced. *Roden* v. *Brown*, 103 Ala. 324. *Schotte* v. *Puscheck*, 79 Ill. App. 31. *Dohmen Co.* v. *Niagara Fire Co.* 96 Wis. 38. It has been held that, where books are put in evidence and it would take a long time to read to the jury the various entries which show the facts relied upon, a witness who has examined the books may be permitted, in the first instance, to state what they contain, not as his own testimony, independently of the books, but as a convenient way of presenting their contents to the jury. This goes for nothing except as he is able, if required, to verify his statements from the books themselves.

*Exceptions sustained.*